## SUPREME COURT.

### PETER G. Fox, executor, &c. of ARCHIBALD Fox, deceased agt. LAWRENCE M. Fox.

An *attorney* has a *lien* on the *judgment* obtained by him for his client, to the extent of his claim for *services and disbursements* in the action, whether the amount of his compensation is *agreed upon or depends upon a quantum meruit.*
The attorney is entitled to such a *sum* as shall have been *agreed upon* between him and his client; and the *lien* will attach to the judgment to *the extent of the amount thus agreed upon.*

*Payment* of the judgment to any other person after notice of the lien, will be of no avail against the attorney's right *to enforce it for the amount of his claim.*

When there is a *dispute* as to what the *contract is,* or in regard to the *amount* which the attorney is entitled to *demand under it,* and also when the amount of compensation is by express agreement made *to depend on the value of the services, and unliquidated,* the remedy of the attorney is by *direct action* against all the parties. There cannot be a *compulsory reference* on these questions. The case of *Haight* agt. *Holcomb,* (16 *How. Pr. R.,* 173,) settles this point.

*Saratoga Special Term, January,* 1863.

MOTION made on an order that the plaintiff show cause why he should not pay to Henry C. Adams, the attorney and counsel for the defendant in this action :

1st. The amount of the defendant's taxed bill of costs and disbursements, as the same were entered in the judgment in this action, together with the interest thereon from the date of the judgment, (July 24, 1862.)

2d. The amount justly due to said Adams for his general services and disbursements rendered by him for his client, the defendant, as his attorney and counsel in this cause, as the same are specified or indicated in his bill against the defendant, a copy of which was served with the papers for this motion.

3d. Why the payment or satisfaction, if any has been made, of such judgment, should not be set aside and vacated to the extent of said Adams' claims and lien, referred to in said motion papers, and the said Adams, defendant's attorney, have leave to issue execution upon the judg-

ment in this action for a sufficient amount to cover the claims and demands he holds against the said defendant, as stated in said motion papers, or for such other relief in the premises as the court shall see fit to grant.

In the 22d *How. Pr. R.*, 453, and 24 *How. Pr. R.*, 385, many facts appear, showing the nature and character of this suit, and the extent of labor, services and disbursements rendered by Adams as attorney and counsel for defendant in this cause.

The judgment referred to was entered July 24, 1862, upon the report of Geo. A. Hardin, Esq., sole referee upon the second trial, for $1,862.24, and for costs and disbursements, $681.83. This includes referee's fees, $187.75, and witnesses' fees, $72, paid by the defendant. On the 7th of October Adams was informed by the plaintiff that the defendant left that day at noon for Michigan, to reside there.

On the 8th of October, Adams served a written notice upon the plaintiff, claiming a lien on the judgment for his whole bill, and should look to the plaintiff to arrange the same with him, and that the plaintiff should not pay the amount of Adams' bill to any but him.

It also appeared that defendant was worth nothing except what was involved in this suit, and that he frequently promised to Adams that he should be amply rewarded for his services and disbursements out of the avails of the suit; and that upon those promises Adams rendered those services, and made the large advances of money to carry on the suit.

The defendant, in his affidavit, denies that he ever made such promises. This affidavit was taken before a notary public at Detroit, Mich., which the clerk certified as to the notary.

A preliminary objection was taken to it on the ground that it was not properly certified. (*See* 3 *R. S., 5th ed.,* 677–8, (396) § 25.) This question was reserved and the affidavit was read on the motion.

HENRY C. ADAMS, *for the motion.*

1. Upon the entry of the judgment the defendant's attorney became the equitable assignor of the judgment to the amount of his claims and demands for services and disbursements in this cause. (*See* HARRIS, *J., Rooney* agt. *Second Avenue R. R. Co.,* 18 *N. Y. R.,* 371, *and cases there cited.*)

2. The costs in the judgment went to the defendant, not to his attorney. The Code, § 303, says in terms, that the party shall recover " certain sums by way of indemnity for his expenses, &c., termed costs."

The attorney's claims are of a different nature. They extend in every direction, for which the fee bill has made no provision, and for which he holds against his client and has a lien, not simply upon the costs in the judgment .but upon the whole judgment for his entire bill. (*See* HARRIS, *J., id.,* 370.)

How much his claims against his client shall be, depends upon the contingencies of the case, and the measure shall depend upon " the agreement, express or implied, of the parties." (*Code,* § 303; *See* COMSTOCK, *J.,* 18 *N. Y. R.,* 373.)

3. If no express agreement be made, there is still an agreement which the law will imply from the nature of the case, for no party can foresee where his cause will·go to ; and no professional gentleman can foresee the extent of the services he must necessarily render. If the attorney has earned, by his labor and expenditures for his client, say $100, or half the amount of the judgment, or the whole of it, or more than the judgment, whatever may be the *quantum meruit,* there is an agreement that it shall be paid, even though no words pass, for the law implies it from the nature and extent of the services and disbursements. If words pass, fixing a stipulated sum, they shall be the restriction or limitation as to amount. If no words

pass, then the amount agreed upon, as the law implies, rests upon a *quantum meruit*. This is the plain import of § 303, and the fair construction of the decisions.

If the bill be the rates fixed by § 307, and the attorney has earned five times that bill, shall the attorney have no more than the bill? If so, then why was the term *implied* employed in § 303? (*See* Comstock, *J.*, 18 *N. Y. R.*, 373.)

4. In this case the defendant, who was in indigent circumstances, repeatedly agreed with his attorney and counsel that he should be amply rewarded out of the avails of the suit, which was a large judgment. This is shown by the positive affidavit of the attorney, and is corroborated by various undisputed contemporaneous circumstances, and the defendant's attempt to deny such agreements should receive no countenance. Had the defendant failed in his precarious counter-claims, the attorney would have got nothing from the empty pocket of his indigent client.

Having won the cause, shall it be said, even in the absence of any words passed, that the attorney shall have only the $422, when he has expended more than half that for cash advances, besides enormous labor, not included in the bill?

If the attorney can recover more than the taxed bill upon a *quantum meruit*, in the absence of any words passed, it must necessarily be upon an implied agreement, and the law makes his lien co-extensive with it.

Such is the palpable meaning of § 303, and such is evidently the drift of the decisions. If not, then the word *implied* should be wiped out of § 303 as of no force, and only calculated to tantalize and mislead the profession.

5. This application is in the most essential respects like the case of *Rooney* agt. *The Second Avenue R. R. Co.*, (18 *N. Y. R.*, 368;) that was an application to protect the attorney's rights, so is this; there the judgment debtor was required to show cause, &c., so here; there the judgment creditor was not a party to the application, nor is he here;

there the court protected the attorney's rights, so it should here.

The only essential difference between the cases is, that there the amount was limited, here it rests upon a *quantum meruit*. There the plaintiff made an honest affidavit, tending to support the application; here the defendant makes one corruptly tending to defeat it.

The equities, too, of this case preponderate over all others, for the defendant has absconded, manifestly with intent to defraud his attorney and counsel of his pay for enormous labor and expenditures, (*see ante*, 24 *How.*, 410,) and the relations between the plaintiff and defendant go to prove that the plaintiff is a party to this corrupt combination to defraud the attorney out of his bill.

6. In such a case as this, with such circumstances as surround it, the attorney ought not to be put to any expensive, laborious or prolix action or proceedings to obtain his remedy. He should have it by this short and simple proceeding, as in the case 18 *N. Y. R.*, 368, and should not be compelled to earn a single dollar over again to get what is his due. The bill in this case is made up of specific items, and is proved *prima facie* to be correct and just, and an order should be made that the plaintiff pay it, or that the attorney be at liberty to issue execution for the amount, unless the plaintiff or defendant shall desire a reference to ascertain the correctness of the bill. Then the order should stand for the amount so reported due to the attorney. (14 *Abbott's P. R.*, 229.)

HENRY B. CUSHNEY, *opposed.*

This motion cannot be entertained for the following reasons:

1. The court cannot, on this motion, determine how much L. M. Fox is indebted to his attorney for services in this cause *exclusive of the taxable costs*. The defendant, L. M.

Fox, has an undoubted right to contest any pretended claim over and above the taxable costs, in the ordinary way, by *action;* and the court has no power to *order a reference* without his consent on this motion. (16 *How. Pr. R.,* 173.)

2. The attorney asks leave to issue execution on the judgment. His papers do not show the judgment satisfied, and a motion for that purpose is not necessary. This is an undoubted right he has, and this seems to me to dispose of the other proposition in the case, viz: That the plaintiff pay him the amount of his taxed bill of costs, as the same are entered up in the judgment.

3. The lien of the attorney in this case extends to the taxable costs as they appear on the judgment roll, and no further. (16 *How. Pr. R.,* 173, *&c.;* 18 *N. Y. R.,* 368, *&c.*)

The case of *Carpenter* agt. *Sixth Avenue R. R. Co.,* decided in the superior court of New York in March, 1862, I think reported in *Abbott's P. R.,* decides every question in this case against the attorney Adams.

The plaintiff offered to pay, before the service of the motion papers on him, the taxable costs to the attorney, amounting to over $400, which he refused to take. The money in his hands belonged to an estate which he represented as executor, and was paid over to the assignee of the judgment by direction of the surrogate—done to avoid accumulation of interest.

4. The only remedy of the attorney Adams is by action, and not by motion against this plaintiff.

The motion should be denied with costs.

BOCKES, Justice. It is well settled now that an attorney has a lien on the judgment, obtained by him for his client, to the extent of his claim for services and disbursements in the action. To that extent he is to be deemed the equitable assignee of the judgment.

The law is so declared in *Rooney* agt. *The Second Avenue R. R. Co.,* (18 *N. Y. R.,* 368.) There are many other cases

to the same effect in this court. (20 *How.*, 39; 16 *How.*, 160–173; 12 *How.*, 136; *see also* 9 *How.*, 16, *and* 14 *Abb.*, 229, *in N. Y. common pleas.*)

The lien exists, too, whether the amount of the attorney's compensation is agreed upon, or depends upon the *quantum meruit.* (*See above cases.*)

. The question, then, is :. What is the amount to which the attorney is entitled for services and disbursements ? for when that is determined, the case is relieved from all difficulty as regards his lien.

1. The attorney is entitled to such sum or amount as shall have been agreed upon between him and his client. This was decided in *Rooney* agt. *The Second Avenue R. R. Co., supra.* It was there held that the compensation and lien was a subject of agreement between the attorney and client, and might be more or less in amount than the allowance for services specified in the Code. Judge HARRIS says, that the effect of the Code is "to leave the attorney free to agree with his client for a greater or less amount than that which he may recover, according to circumstances." Judge COMSTOCK says, in the same case, that since the Code the compensation of the attorney is left "to the agreement of the parties, express or implied." This being so, it follows, according to the above authorities, that the agreement, by determining the amount of compensation, also determines the extent of the attorney's lien. There can be no difficulty, then, in a case where the amount the attorney is to receive is agreed upon, and stands uncontradicted. He has a lien on the judgment for such amount, and may enforce it by taking the proper steps for that purpose. Payment of the judgment to any other person after notice of the lien will be of no avail against his right to enforce it for the amount of his claim.

2. An attorney is entitled, on a general retainer in a cause, without any agreement fixing the measure of his compensation, to be remunerated according to the allowance for

services and disbursements specified in the Code. This is decided in *Haight* agt. *Holcomb*, (16 *How.*, 173.) Perhaps this was not actually adjudicated in *Rooney* agt. *The Second Avenue R. R. Co.*, but the principle was advanced with the apparent approval of the court. Judge HARRIS (*page* 371) says : " In the absence of any agreement on the subject, I suppose the sum recovered by the party as an indemnity for his expenses would be the measure of compensation allowed to the attorney. ⋅ This, then, would be the extent of his lien."

On this point, the two cases cited are not at all in conflict. On another point, it seems to me, they are not in entire consonance. Still, the former case is cited by Mr. Justice HARRIS, in his opinion in the latter case, without intimating any point of difference whatever. I think it plain, however, that the main question, decided in *Rooney* agt. *The Second Avenue R. R. Co.*, is in conflict with that part of the decision in *Haight* agt. *Holcomb*, whereby it is decided that the attorney's lien is in all cases restricted to or measured by the taxable costs. As was stated above, it may be more or less, in case the parties see fit to make an agreement in regard to the compensation; but it ˙seems that the case of *Haight* agt. *Holcomb* is not overruled, in so far as it decides that the attorney's lien, in the absence of any agreement, is restricted to what appears as costs on the judgment roll. His general retainer raises an implied promise to pay the fair value of the attorney's services, which Judge HARRIS supposes would be the sum authorized by law to be recovered by the party as an indemnity for his expenses in the action.

3. If it be agreed between the attorney and client that the attorney shall be entitled to a fair and reasonable compensation beyond, or over and above the taxable costs, then the lien will attach to the judgment to the extent of the compensation thus stipulated for. This, I am aware, is in conflict with the decision of *Haight* agt. *Holcomb;* but I

understand this proposition to be maintained as sound law in the case cited in the court of appeals. (18 *N. Y. R.*, 368.) It is there distinctly stated that the attorney may agree with his client as to how much he shall receive for his services, and may thus fix beforehand the amount for which he shall have a lien upon the judgment when recovered. It was supposed by the court in *Haight* agt. *Holcomb*, that no lien could be maintained, because of the indefiniteness of the agreement as to the amount of compensation; and for the further reason that there was no short remedy by which the attorney could determine the amount of his lien. But there is no difficulty in settling the amount and in having it declared a lien on the judgment. If there be no short way of accomplishing this, there remains the usual way by direct action for that purpose. Indeed, this seems to me the true mode of proceeding, when there is a dispute as to what the contract is, or in regard to the amount which the attorney is entitled to demand under it, and also when the amount of compensation is by express agreement made to depend on the value of the services and unliquidated.

It was held in *Haight* agt. *Holcomb* that in case of dispute on these points, there could not be a compulsory reference.

The decision of that case in this regard has not been overruled. It is a general term decision in this court, and I am unquestionably bound by it. The New York common pleas held otherwise. (14 *Abbott*, 229.) But I must, at special term, follow the decision in our own court, made at general term, in preference to that.

There seems to be a difficulty in proceeding by motion to try matters in controversy between one of the parties to an action and his attorney. Those matters are not in issue in the cause, nor do they bear on the issues therein, nor do they relate at all to the practice or conduct of the cause as between the plaintiff and defendant. The proceeding, in all its material bearings, is by the attorney against his

client; yet how is the client (the defendant in this case) before the court on this motion? The motion papers were not served on him, nor has he appeared on the motion. True, his affidavit is read, but it is read by and in behalf of the plaintiff. This motion is by the attorney in hostility to the interests of the client. It follows that he has a right to be heard, and I think he may insist on being heard in the usual mode, by which the rights of parties are determined. A claim is made against him as to what sum or amount he shall pay his attorney. If he admit his liability, in other words, if there be no controversy as to the terms of the contract, nor as to the amount he ought to pay under such contract, the difficulty might be settled on motion. Even if he had been served with the motion papers, as regards him, it would then be a motion to determine his liability, or, what is equivalent, a claim against him for services, by a reference without action. This cannot be done. An attorney can no more determine his claim for services by a reference without action, than could any other laborer for hire.

There is no difficulty in securing the lien by direct action for that purpose against all parties, and this is the course to be adopted when there is a controversy as to what the contract is, or in regard to the amount payable under it.

It follows from the above considerations that the motion in this case must be denied. In my judgment, the proper way for the attorney to proceed, with a view to a determination of the matters in controversy in a case like this, is by an action to determine the amount or extent of the lien, and have a decree declaring the judgment subject to the lien, and for liberty to issue execution therein for the amount due him by virtue of his contract with his client. Then issue may be framed and a trial had in a way to secure the rights of all parties.

An objection is made to the affidavit of the defendant, L. M. Fox, on the ground that it is not duly authenticated.

But I do not deem the objection of importance, for even if the affidavit should be excluded the motion should be denied, if I am correct in the conclusions at which I have arrived on the law and practice.

The motion will be denied without costs, and without prejudice to any action or other proceeding to attain the end sought by the motion.

.I do not understand that there is any objection to paying the costs and disbursements taxed and included in the judgment, except the referee's and witnesses' fees, which were paid by the defendant himself and not by the attorney. Indeed, the plaintiff has offered to pay such costs and disbursements, and still holds the amount ready for the attorney whenever he will accept that amount. To this extent the plaintiff admits and recognizes the attorney's claims and lien. The motion was, of course, unnecessary as regards those costs and disbursements. I presume the attorney can have this amount by calling for it, or if payment should be refused he could issue execution therefor, without any order or application to the court.

Motion denied.