# Wheeling.

## RENICK *et al. v.* LUDINGTON,

### AND

## FORD & SON *et al. v.* RENICK *et al.*

### Decided April 3, 1880.

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

1. An attorney has a lien on the judgment or decree, obtained by him for his client, for services and disbursements in the case, whether the amount of his compensation is agreed upon or depends upon a *quantum meruit.*

2. This lien includes not only the amount necessary to pay for his services and disbursements in the case, in which the judgment or decree is rendered, but also the amount necessary to pay for his services and disbursements in any other case, so connected with it as to form the basis on which such judgment or decree is rendered, or essential to the realizing of such judgment or decree.

3. This lien of the attorney is subject to all the equitable liens of the defendant in the judgment, existing at the time of the rendition of the judgment or decree.

4. Notice to the defendant express or implied of the claim of the plaintiff's attorney to such lien, before the defendant pays such judgment or decree to the plaintiff, is essential to the maintenance of such lien; but notice of the existence of such lien to the assignee of such judgment or decree is not essential to the maintenance of such lien against such assignee without notice.

5. Such lien may be waived by any arrangement or transaction made by or with the attorney, which satisfactorily shows an intention to waive such lien and rely exclusively on some other security or mode of payment; but such lien will continue to exist, unless a manifest intention, that it shall not continue to exist, appears.

6. P., an attorney, recovers a judgment for R. against L., and after L. becomes totally insolvent, R. assigns this judgment for a valuable consideration to D., who has no notice of the attorney's lien on this judgment. P., the attorney, then takes the bond of R. for his fees in the case, and at the same time R. confesses a judgment to P. for the amount, and simultaneously he assigns his judgment against L. to his attorney P. to satisfy his fees. These transactions are not a waiver by the attorney of his lien on this judgment; and he is entitled to priority over D. in the distribution by the court of the amount of this judgment.

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

7. For a case, in which the doctrine of res adjudicata does not apply, see the opinion of Green, President.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Greenbrier, rendered on the 22d day of November, 1878, in two causes in chancery in said court then pending, in the first of which B. F· Renick and others were plaintiffs and Samuel C. Ludington was defendant, and in the second of which D. J. Ford & Son and others were plaintiffs and B. F. Renick and others were defendants, allowed upon the petition of James F. Patton.

Hon. H. A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

The late firm of Caperton & Patton, of which the appellant, James F. Patton, is the surviving partner, was employed many years since to prosecute certain suits at law in the circuit court of Greenbrier county, W. Va., against Samuel C. Ludington, for certain debts, which arose from a certain contract between those parties. This firm was also employed by Renick to defend in a certain suit in chancery, brought in that court by Ludington to set aside this contract. This last cause was taken to the Supreme Court of Appeals of West Virginia and there attended to by said counsel, who finally succeeded in establishing said contract and also in obtaining judgments in the common law suits. They then as counsel for

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

Renick instituted in said court a creditor's bill, to enforce the lien of said judgments against the real estate of said Ludington, which is still pending in said circuit court. During the progress of this cause the lands of said Ludington were sold by commissioners, and the proceeds arising therefrom are in the process of collection and distribution under orders of said circuit court, and a certain sum was allowed and decreed to said Renick, to be paid out of the proceeds of said sales.

At the same time there was pending in the circuit court of Greenbrier county another creditor's bill, brought by Ford & Son and others against B. F. Renick and others, he having become insolvent, one of the objects of which suit was to enforce against the real estate of Renick the liens of numerous judgments, and to have the same paid by a sale of his lands. The amount of the judgments in favor of *Renick* v. *Ludington* as of November 13, 1875, was $5,235.35. One of these judgments was rendered October 7, 1871, and was for $4,934.55 with interest from April 20, 1871; and on October 3, 1876, John W. Dunn having a judgment against Renick amounting then to $901.01, Renick assigned to him so much of the above judgment as would make and produce, when fully paid, the $901.01 with interest from October 3, 1876; and on the 9th day of October said Renick assigned to James J. Reid so much of his judgment against said Ludington, as will make and produce $537.25 with interest from October 9, 1876. This assignment was made to satisfy a balance on two bonds, which were secured by a deed of trust on certain real estate of said Renick; and when the assignment was made, the bonds, which then belonged to Reid, were surrendered.

In the above chancery suit of *Ford & Son et al.* v. *Renick et al.*, a commissioner on October 1, 1877, reported with reference to the judgment of said *Dunn* v. *Renick*, that Dunn had appeared before the commissioners and represented that he had obtained from Renick this assign-

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

ment of October 3, 1876, and that when paid it would fully satisfy his judgment; and the commissioner states that "he has examined the debt due from Ludington to Renick and finds there will be enough of the same to pay the Dunn assignment after deducting all previous assignments, and this in his opinion disposes of the Dunn judgment." The commissioner in this report also reports the above facts in relation to the debts due J. J. Reid, and adds: "Under these circumstances your commissioner reports the Reid debt paid." He accompanies this report with a statement of the judgment in favor of *Renick* v. *Ludington*, showing the amount of the decree in the chancery cause of *Renick* v. *Ludington* was of date November 13, 1875, $5,235.35, and that of this an assignment had been made of date October 26, 1875, to J. H. Renick, now for Snyder, of $657.54, another assignment to A. C. Snyder of September 5, 1876, of $2,656.31, to R. F. Dennis of same date $900.00, to J. W. Dunn of October 3, 1876, $901.01, and to J. J. Reid October 9, 1876, $537.25, which assignments would consume the whole amount of the decree, leaving due to Reid, as of October 9, 1876, the sum of $191.41. This portion of the report was not excepted to; and by a decree in said suit of *Ford & Son et al.* v. *Renick et al.*, rendered November 17, 1877, this report was confirmed.

Subsequently the commissioner in another report in said cause dated October 24, 1878, stated, that "it was then represented to him that James F. Patton, in whose favor he had reported a judgment against Renick as of date November 14, 1870, for $900.00, claims that this debt was a fee for services for Renick in the suit of *Renick* v. *Ludington*, and is therefore a lien (as claimed by Patton) upon the judgment against Ludington; and the commissioner was requested to state an account of the Ludington judgment and the assignments made by Renick, and include Patton's debt, treating it as a lien on said judgment, and further to report whether or not it will change the list of liens reported, and if so, how and

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

to what extent. It is manifest, that, if the Patton debt is allowed by the court as a lien upon the Ludington judgment, no part of the Reid debt can be paid, and but a part of the assignment to Dunn." The commissioner then makes a statement of this judgment in favor of *Renick* v. *Ludington*, in which he allows this claim of Patton as a lien on the same prior to the assignments to Dunn and Reid; and the result is, that there would be nothing to pay Reid, and there would be a balance due to Dunn of $558.24, which would be unpaid after the application of what remained of this judgment in favor of *Renick* v. *Ludington*; and the commissioner concludes his report as follows: "Thus your commissoner concludes, that, if the Patton debt was a lien upon the debt known as the Ludington judgment, then at the time of the assignment by Renick to Dunn there was not enough to pay $901.01 by $558.24, and that Dunn's judgment would not be paid by that amount with interest thereon from the 3d day of October, 1876; and further that the said amount would have to be paid before the amount reported in favor of Renick's sureties, as the judgment was obtained at the April term of the circuit court, 1871, and the account of the liens heretofore made in this report would have to be changed thus:

Insert as No. 1½ the balance on judgment due to John W.
    Dunn *et al.*, of judgment April, 1871, due 29th of May,
    1871............................................................................. $558.24
Interest on same from Oct. 3, 1876, to Nov. 1, 1878............    69.15
                                                                              ———————
        Amount as of Nov. 1, 1878............................... $627.39

If however the court should hold, that the debt due to J. F. Patton possess no priority, or is not a lien on the Ludington judgment, the statement in the last report, showing the amount of said judgment and the interest of the different assignees therein, is correct, and need not be changed; nor need the report of this lien on B. F. Renick's real estate, as reported on page four, be changed."

This portion of the report was excepted to by the counsel of Renick's administrators and by the counsel of Dunn; and James F. Patton by leave of the court

filed his petition in the suit of *Renick* v. *Ludington et al.*, in which he sets up formally his claim, stating the facts which have been hereinbefore stated, including those appearing from said two reports with reference to the assignments of parts of this Ludington judgment to Dennis Snyder, James H. Renick, J. W. Dunn, and J. J. Reid who was then dead.

1880
Special Term.

Renick et al.
v.
Ludiugton,
and
Ford & Son et al.
v.
Renick et al.

The petition then proceeds as follows :

" Your petitioner further represents that on the 14th of November, 1876, he had a settlement and adjustment of the amount due him as surviving partner as aforesaid for his said professional services, when and where it was settled and agreed between them that the said Renick was indebted to him in the sum of $900 for said services, and thereupon confessed judgment for the same, with interest from the 14th day of November, 1876, till paid, and $14.20 costs, as will appear from a copy of said judgment herewith filed marked Exhibit "A" and prayed to be taken and read as part of this petition ; that said Renick had long before this settlement executed his bonds to said firm for their professional services in said cases, which bonds, on November 14, 1876, amounted to more than the said $900 by several hundred dollars, which this petitioner agreed to abate and did abate, and agreed to accept the $900, when paid, as full payment, and said bonds were executed long before any of said assignments were made.

" Your petitioner is advised and charges that he has a primary or first lien upon the proceeds of said judgments which are being collected and distributed as aforesaid, and that his interest and rights cannot be affected or prejudiced by any transfers or assignments made by said Renick. He therefore, prays that he may be made a party defendant to the above entitled suit of *Renick* v. *Ludington et al.*, with leave to answer ; that this his petition may be taken and read as his answer ; that the said commissioners, Snyder and Dennis, who sold said lands and who are charged with the collection and distribution

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

of the proceeds as aforesaid, may be ordered and directed, out of the amount applicable to the money decreed to Renick as aforesaid, to pay first to him the said sum of $900, with the interest accrued thereon, and the said costs, as well as the costs by him expended on account of this proceeding, and that he may have all other relief, &c. And as in duty bound, your petitioner will ever pray, &c."

The answers of Dunn and of Reid's administrator admit the facts stated in Patton's petition, but they state the additional fact, that on the bonds which Renick gave for the said fees to Patton, a judgment was confessed, and an assignment of a portion of this Ludington judgment made, to satisfy the same, all of which were subsequent to the assignment to respondents. They claim that Patton never had any lien on this Ludington judgment for his fee, and if he had, it was waived, merged and gone by this taking of the bond, obtaining judgment thereon and obtaining a transfer of this Ludington judgment to satisfy the same. The facts stated in these answers are not controverted by Patton ; and the parties agreed the facts to be substantially as stated in Patton's petition and in these answers. The record, including these agreed facts, shows that the material facts, bearing on the matters in controversy in this appeal, are, that the firm of Caperton & Patton, of which the appellant, Patton, is the surviving partner, was employed by Renick to obtain judgment in the circuit court of Greenbrier county against Ludington on certain debts arising out of a certain contract ; that these debts were disputed, and the contract, out of which they arose, was sought to be set aside by a suit in chancery ; that the litigation was protracted, not only in the circuit court of Greenbrier county but also in this Court, and it terminated in favor of Renick ; that the said firm of Caperton & Patton then instituted a suit in chancery in the circuit court of Greenbrier county, to enforce Renick's judgment out of the real estate of Ludington, and the firm of Caperton

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

& Patton took the bond of Renick for their fees in these litigations.

In the last named cause the circuit court of Greenbrier county, rendered a decree in favor of *Renick* v. *Ludington* for $5,235.35, with interest from November 13, 1875, to be paid out of the proceeds of his lands. On October 26, 1875, Renick assigned of this decree or judgment, to J. H. Renick, now for the use of A. C. Snyder, $657.54, with interest from date of assignment. On September 5, 1876, he assigned to A. C. Snyder $2,656.31 thereof with interest from date of this assignment, and at same time with interest from same date he assigned to R. F. Dennis $900.00 thereof. On October 3, 1876, he assigned to J. W. Dunn a judgment due him $901.01, with interest from its date, and on October 9, 1876, he assigned to J. J. Reed for $537.25 thereof, with interest from that date in satisfaction of certain bonds, which were then surrendered, held by Reed, and which were secured by an old deed of trust on real estate executed by Renick, dated December 10, 1872, and recorded February 20, 1874. Patton & Caperton, by reason of the insolvency of Ludington, were unable to make the whole of Renick's debt a just lien, and in consideration thereof, the survivor of this firm, Patton, agreed with Renick on November 14, 1876, to abate $300.00 of their fee and the balance of these fees then due being $900.00, Renick on that day confessed in the circuit court of Greenbrier county judgment for this sum and costs, and at the same time assigned this amount of said judgments or decree in favor of *Renick* v. *Ludington*. Renick was at this time insolvent, and the previous assignments of this judgment or decree against Ludington in his favor consumed the whole of this fund, and left a balance due to J. J. Reid of October 9, 1876, of $191.41. So that, if Patton has no lien on this judgment or decree of *Renick* v. *Ludington*, for his fees, or if he has waived this lien by taking his bond and obtaining a confession of judgment thereon and an assignment of this claim on Novem-

49

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

ber 14, 1876, he will receive nothing; and on the other hand, if he has such lien, then Reid will receive nothing from his assignment, and Dunn will not receive enough to pay his claim by $558.24, with interest from May 29, 1877, and these claims must be lost, unless these parties can look to their original liens to satisfy them. Dunn's judgment dating from April, 1871, and Reid's deed of trust from February 20, 1874, if allowed, will throw the loss on other parties.

The respective parties, when they took from Renick their several assignments of portions of this judgment of *Renick* v. *Ludington,* had no notice of the claim by Patton for any lien for his fees in getting such judgments and decree and in a creditor's bill in said circuit court brought by *Ford & Son et al.* v. *Renick et al.,* to subject Renick's lands to the payment of liens upon it, in which suit Patton was a party defendant. The commissioner, taking no notice of Patton's lien as an attorney for Renick on this judgment or decree against Ludington, reported the judgment of J. W. Dunn and the deed of trust of J. J. Reid as paid by these assignments of Renick to them of portions of his judgment or decree against Ludington; and in this suit, no exception being taken to this part of this report, it was confirmed by the court by its decree of November 17, 1877. Subsequently, on November 28, 1878, Patton by leave of the court in a petition filed in the said chancery cause of *Renick* v. *Ludington,* set up his lien as an attorney on this decree or judgment in favor of *Renick* v. *Ludington et al.,* and the commissioner having by his report of October, 24, 1878, made a report based on the validity of Patton's claim of his lien as an attorney on this fund, and the administrators of Reid and Dunn having excepted to this report, the circuit court of Greenbrier county on November 22, 1878, heard together the two causes of *Renick* v. *Ludington et al.,* and *Ford & Son et al.* v. *Renick et al., deceased* : "on consideration thereof the court is of opinion that the defendant, J. F. Patton, by the assignment taken

fixed the plan as well as the amount of his fee, and in view of the facts in these causes is not entitled to an attorney's lien against the assignees of the plaintiff, Renick, upon the debt mentioned in his petition," and then proceed in a long decree to dispose of other questions and of the funds under the control of the court and to order a sale of certain land.

By a writ of *certiorari* at the instance of Reid's administrator additional portions of the record have been returned, containing the assignment of one of these Ludington judgments by Renick to Knight dated June 8, 1874, but proves to have been antedated, the time of its execution being subsequent to the assignments to Dunn and Reid, that is, subsequent to October 9, 1876, and the petition of Knight claiming the benefit of this assignment as of its date and certain facts, which were proven and which he claims give him a right to the benefit of this assignment as of its date. This assignment was of a small judgment of $173.74, rendered in favor of *Renick* v. *Ludington*, October 6, 1871. There was another judgment in favor of *Renick* v. *Ludington* for $4,934.55 as of date April 20, 1871, the assignment by Renick to Reid was of " my judgment against S. C. Ludington," which his counsel claims carried both these judgments, and he also claims that this assignment to Knight was invalid and void in law, as well as fraudulent. This portion of the record and these controversies between these assignees of Renick are foreign to the purpose of this appeal, and are thus briefly stated, because the merits of these controversies are in no manner involved in this appeal, and it is unnecessary and improper, in the case as now presented to the court, to express any opinion on these points. James F. Patton has taken an appeal from the decree of November 22, 1878, and there is involved in this case as presented to this court only the merits of this decree, so far only as it determined that said Patton was not entitled to an attorney's lien against the assignees of the plaintiff,

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

1880
Special Term.

Renick *et al.*
v
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

Renick, and nothing which is said in the opinion following should be regarded as in any manner affecting the rights of any of these assignees as among themselves but only their rights as against said Patton.

*J. W. Harris* and *A. F. Mathews,* for appellant, relied on the following authorities :

12 Conn. 444; 8 Fla. 183; 27 N. H. 324; 37 N. H. 223; 3 Cai. (N. Y.) 165; 10 Wend. 617; 15 Johns. 405; 1 Cow. 172; 2 Aik. (Vt.) 162; 14 Vt. 247; 7 Am. R. 707; 50 Me. 231; 6 T. R. 361; 14 Ga. 89; 3 Cooper (Tenn.) Chy. 618; 10 Wall. 483; 18 N. Y. 368; 9 Abb. (N. Y.) Pr. 220; 19 How. Pr. 91; 14 Abb. Pr. 229; 24 How. Pr. 453; 14 Ga. 110; 30 Me. 152; 38 Ala. 527; 13 Ark. 193; 4 Cow. 416; 15 Johns. 405; Cr. & Ph. 457; 13 W. Va. 718; 18 Cal. 436; 3 Hill (N. Y.) 228; 7 Mon. 438; 14 B. Mon. 18; 57 Pa. St. 482; 2 Leigh 84; 24 Gratt. 202; Story Agency §§ 362, 366; 1 Lom. Dig. 216; 2 Tucker 454; 2 Rand. 428.

*Price & Preston,* for John W. Dunn, cited the following authorities :

2 Leigh 84; 6 T. R. 262; 2 Kent Com. 300; 7 Am. R. 707; 3 Cooper (Tenn.) 618; 5 Rob. New Pr. 812.

No appearance for appellee.

GREEN, PRESIDENT, delivered the opinion of the Court:

The principal question involved in this appeal is, whether James F. Patton has an attorney's lien for his fees on the fund in the case of *Renick* v. *Ludington,* coming to his client Renick, for his fees in this and other suits, which had been prosecuted by him for the recovery of the claim in favor of *Renick* v. *Ludington,* and which claim was recognized and a decree rendered therefor in this suit, as against the assignees without notice of this fund claiming by virtue of assignments made in their favor by Renick. The first inquiry is, whether he

ever had such a lien, and then if he had such claim, whether by the arrangements made by him on November 14, 1876, with Renick he waived, abandoned or lost such lien.

In the English courts the claim of an attorney, to have his fees and disbursements in a suit paid out of the judgment he obtains, has been recognized. The courts held that this lien of the attorneys on the judgment in the case could not vary or affect the rights of the defendant in the case; and while therefore, if the defendant paid to the plaintiff after notice by the plaintiff's attorney not to do so till his fees were paid, he could be compelled to pay the judgment again to the extent of the fees of the plaintiff's attorney, it being a lien on the judgment. But if paid in good faith without such notice, its payment could not be again insisted upon. See *Read* v. *Dapper*, 6 T. R. 360; *Ormerod* v. *Tate*, 1 East 464. In carrying out these views the courts of common pleas held, that the lien of the plaintiff's attorney on the judgment was subordinate to the defendant's right to offset. This view was held in the English chancery courts; while the Court of King's Bench held, that this lien was superior to the defendant's right to such set-off. See *Hull* v. *Ody*, 2 B. & P. 28; *Ensden* v. *Darley*, 4 B. & P. 22; *Simpson et al.* v. *Lamb*, 50 Eng. L. & E. 59; *Taylor* v. *Popham*, 15 Ves. 79; Rhodes *ex parte*, 15 Ves. 541; 4 Bligh N. S. 604. Now under the rule of the courts, 2 W. IV., the plaintiff's attorney in England has a lien for his fees in the suit, and no offset is allowed to prejudice his claim.

Whether this lien of the plaintiff's attorney on the judgment he obtained for his fees and disbursements in the case, should be recognized by the courts in this country, has been in some cases questioned and in others denied. In England attorneys are recognized officers of the court, and are entitled to fees for services performed by them, as are our clerks. These fees are ascertained and paid, and are recognized in the taxation of the costs,

1880
Special Term.

Renick *et al.*
v.
Ludington.
and
Ford & Son *et al.*
v.
Renick *et al.*
Syllabus 1.

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

and some of the American courts deny the existence of any attorney's lien on the judgment, where there is no taxation of costs on account of the attorney, and restrict it to the costs where its taxation is authorized by law. See *Frissell* v. *Hale*, 18 Mo. 18; *Ocean Insurance Co.* v. *Ryder*, 22 Pick. 210; *Carrier* v. *Boston & Maine Railroad*; Kyle *ex parte*, 1 Cal. 332; *Mansfield* v. *Dorland*, 2 Cal. 507; *Hill* v. *Brinkley*, 10 Ind. 102; *Walton* v. *Dickerson*, 7 Barr 376; *Davenport* v. *Ludlow*, 4 How. Pr. R. 438; *Benedict* v. *Harlow and Wendell*, 5 How. Pr. R. 350.

But many of the American courts dissent from these views, and hold, that an attorney has a lien on the judgment in favor of his client for his compensation as an attorney in the obtaining of such judgment, whether his fee is taxed in the costs or not by law, and if so taxed, his lien is not restricted to the amount so authorized to be taxed by law, unless by the law he is prohibited from receiving of his client more than the amount so authorized to be taxed as a fee. The English rule, if it only secured legal costs, they alone being there allowed by law as a *compensation*, would by irresistable conclusion secure the *compensation* agreed upon by the parties, when none is provided by law. But the lien in England is not confined to the legal fees taxed, it extends to all the *disbursements* of the plaintiff's attorney. The same reasons, which in England extend the attorney's lien to these *disbursements*, would extend it to a charge for services, where such charge is proper, as it is in this country. The attorney according to the English decisions, occupies the position of an assignee of the judgment, who takes it subject to all the rights and equities attached to it. The lien of an attorney on his client's judgment was allowed in England, not because his fees were taxed in the costs, but because it was founded in natural equity, which forbids that a party should enjoy the fruits of the cause without satisfying the legal demands of his attorney; *Wilkins* v. *Carmichael*, Douglass 100, as said

by Lord Kenyon in *Read* v. *Dapper*, 6 T. R. 361, "The principle has long been settled that a party should not run away with the fruits of a cause without satisfying the legal demands of his attorney, by whose industry and expense those fruits were obtained."

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

The courts, who hold these views, decide that the taxed costs of an attorney in England have no merit or justice superior to the claim of counsel for reasonable compensation in this day and country; nor does the former contribute more to the success of the party he represents in England, than does the latter in this country; and therefore there should be in reason and justice a lien in this country on a client's judgment for a just compensation for his counsel, for the same reasons as the attorney's lien is allowed in England. Substantially these views are held by many American courts; and they decide that the attorney has a lien for his fees or just compensation in a suit on the judgment he obtains. See *McDonald et al.* v. *Leroy Napier*, 14 Ga. 89; *Warfield* v. *Campbell et al.*, 38 Ala. 527; *Carter* v. *Bennett*, 6 Fla. 214; *Andrews* v. *Morse*, 12 Conn. 447; *Stewart* v. *Flowers*, 44 Miss. 513 (7 American R. 707); *Hunt* v. *McClanahan*, 1 Heisk. 503; *Rooney* v. *Second Avenue R. R. Co.*, 18 N. Y. 371; *Fox* v. *Fox*, 24 How. Pr. 409. In some cases a distinction has been attempted to be made between a case, where the attorney has agreed upon a certain fee and when there has been no such agreement but the amount of the fee depends upon a *quantum meruit;* but there is no sound reason for such a distinction. This distinction was supposed to exist in the New York courts at one time, but it was properly repudiated in *Fox* v. *Fox*, 24 How. Pr. R. 409. In my judgment the weight of reason and authority is in favor of recognizing the attorney's lien on a judgment in favor of his client for all services, which he had rendered in obtaining such judgment. This lien is in the nature of an equitable lien (see *Brown & Reid* v. *Bigley*, 3 Cooper (Tenn.) Chy. 623) and is based on the natural equity, that the plaintiff

ought not to be allowed to appropriate the whole of a · judgment in his favor without paying thereout for the services of his attorney in obtaining such judgment. This is the right of the plaintiff's attorney as against his own client, and it cannot affect the rights and equities of the defendant against whom the judgment is rendered. But if, after he has been notified by the attorney of his claim of such lien, he pays the judgment to the plaintiff, he thereby attempts a fraud on the plaintiff's attorney, and such payment will not be good, to the extent of the claim of the plaintiff's attorney on the judgment.

Of course when the law prohibits an attorney from contracting for or recovering on a *quantum meruit* more than the attorney's fees taxed in the costs, the attorney's lien could not exceed the attorney's fee so taxed; and this was probably the case at one time in Virginia. See *Major's ex'r* v. *Gibson, &c.,* 2 Patt. & H. 48. Since January 20, 1840, an attorney-at-law in Virginia or in this State has been authorized to make contracts with clients for their fees, and their fees are not limited to those taxed by law as a part of the costs of the suit. See Acts of Virginia of 1839, 1840, ch. 50, p. 44; Code of 1849, ch. 164, § 11, p. 636; Code of West Virginia, ch. 120, § 11, p. 591. While the lien of the attorney is a special lien for his services in obtaining the particular judgment or decree only, yet the principles on which it is based obviously extend the lien to all his services rendered in obtaining the particular judgment or decree, though those services may not all have been rendered in the particular suit in which the judgment or decree was rendered, but were in part rendered in other suits, all tending to and finally ending in the judgment or decree on which the lien is claimed. In *Newbert* v. *Cunningham,* 50 Me. 231, it was decided that the attorney's lien extended to fees in suits arising from and incidental to the enforcement of the judgment which he had obtained.                •

These principles of law are of easy application in this case. Under them it is obvious that James F. Patton

had a primary or prior lien on the proceeds of the judg-
ments in favor of his client, Renick, against Ludington,
which was being collected and distributed in the case of
*Renick* v. *Ludington,* when he filed his petition in that
case. Of course his lien might be waived, as other liens
of like character may be. See *McDonald et al.* v. *Leroy*
*Napier,* 14 Ga. 112; 2 Kent's Com. 640; Story on
Agency 378-381. The intention of the parties appears
to be the polar star which guides the courts in determin-
ing whether a lien of this character exists. Thus in *Cor-
rell* v. *Simpson,* 16 Ves. 275, where a solicitor was em-
ployed in certain business, and papers left with him in
connection therewith, on which the solicitor claimed a
lien for his business fees, the party confessed a judgment
for the amount of his claim, and afterwards gave a note
to the solicitor for the amount payable in three years
after its date. The court held that the taking of the note
was an implied waiver of the lien, because being payable
in three years after its date, it could not be supposed
that the parties intended that the solicitor should retain
these papers for that time, which would result if the lien
was not waived thereby. Though some expressions are
used by Lord Eldon in this case which might lead to a
different conclusion, yet the above was the true ground
of this decision, as appears from *Stevenson* v. *Blacklock,* 1
M. & S. 535, where the facts were somewhat similar, but
which Lord Ellenborough distinguishes from this case,
because the bills of exchange, which had been given for
the solicitor's fees, had been dishonored, when the lease
on which the lien was claimed came into the hands of the
solicitor. Lord Ellenborough says : "It is unnecessary
to canvas this doctrine in *Correll* v. *Simpson,* inasmuch
as there is a material distinction between that case and
the present, for there the bills were running, and there
was no reason to presume that they would not be duly
paid ; in this case the bills have been refused payment."
The lien it was held had not been waived by the taking
of these bills.

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

So too in *Dennett* v. *Cutts*, 11 N. H. 163, it was held that the giving of a note by the client for the amount of the fees due an attorney did not destroy his lien for his fees on a bond placed in his hands for collection by the client. So too in other equitable liens it is held, that, whether a waiver of the lien has taken place, depends on the intention of the parties in the transaction supposed to amount to said waiver. The implied vendor's lien has never been much encouraged by the courts, still where it is once declared to exist, it will not be held to be waived, unless from the transaction between the vendor and the vendee it may be reasonably inferred, that it was the intention of the parties that it should be surrendered.

In *McClandish* v. *Keen et al.*, 13 Gratt. 624, Judge Lee after first showing that the vendor's implied lien is but little countenanced anywhere, and is repudiated in many States, and is especially inappropriate in Virginia, admits that it has nevertheless been recognized in Virginia and he proceeds: "As the lien is generally presumed, it would seem that the burden is upon the purchaser of showing that it is waived, *Hughes* v. *Kearney*, 1 Sch. & Lef. 132; *Machreth* v. *Symmons*, 15 Ves. 239; *Garson* v. *Green*, 1 John. Chy. 308. But this the purchaser can do not only by showing an express agreement to that effect, but also by reasonable inference and implication from the circumstances. Now it would seem well settled that the mere taking of a *bond*, promissory note, bill of exchange, or a simple covenant of the vendor himself will not repel the lien, because, as said by Lord Eldon, it may have been given not to supersede the lien but for the purpose of ascertaining the debt and countervailing the receipt endorsed upon the conveyance. But it is equally clear that when a distinct and independent security is taken, either of other property, or the responsibility of a third person, the party having carved out his own security, the law will not come to his aid by creating another, and the equitable lien will be

gone. *Bonn* v. *Kent*, 2 Vern. 281 ; *Faywell* v. *Hellis*, 2 Amb. 724 ; *Naine* v. *Prowse*, 6 Ves. 752 ;· *Cole* v. *Scot*, 2 Wash. 141 ; *Fish* v. *Howland*, 1 Paige 20 ; *Wilson* v. *Graham's ex'r*, 5 Munf. 297 ; *Gilman* v. *Brown*, 1 Mason 191 ; S. C. 4 Wheat. 255. In such cases the waiver of the lien is placed upon the ground of intention, deduced from the parties taking a special security. See 3 Sugd. Vend. 191 ; 4 Kent's Com. 153. So when although the responsibility of a third person be not taken, if it appear that the note, bond or covenant was substituted for the consideration-money, and was in fact the thing bargained for, the lien will not exist. Then it may be inferred that the credit was given exclusively to the person on whom the security was taken."

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al
v.
Renick et al.

In *Machreth* v. *Symmons,* 15 Ves. 329, White and Tudor's Leading Cases in Equity vol. 1 side page 298 top page 454, Lord Eldon says : " The case put by the Master of the Rolls in *Naine* v. *Prowse,* 6 Ves. 760, of a mortgage upon another estate also affords strong, perhaps not quite conclusive, evidence against the lien, considering the value of the mortgaged estate in general is much more than the amount of the money. It does not however appear to me a violent conclusion, as between vendor and vendee, that notwithstanding the mortgage the lien should subsist. The principle has been carried this length : *that the lien exists, unless an intention, and a manifest intention, that it shall not exist, appears.* That the taking of independent security will not necessarily waive the vendor's lien may be inferred from *Kyles* v. *Tait's adm'r,* 6 Gratt. 44. The true rule is, that the waiver arising from the acceptance of collateral security is presumptive, and may be rebutted by evidence from other circumstances, of an intention not to rely exclusively upon it, but to retain the equitable lien. See *Campbell* v.· *Baldwin et al.,* 2 Humph. 248-258 ; *Marshall* v. *Christmass et al.,* 3 Humph. 616, 617 ; *Prime* v. *Macon and Western Railroad Co.,* 3 Kelley 333, 342. From these principles it necessarily follows, that the

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*

v
Renick *et al.*

taking of a mortgage or collateral security will not extinguish the lien, when there is an express agreement that it shall survive. See *Daughaday* v. *Paine,* 6 Minn. 443.

I have dwelt upon the circumstances which would be held to be sufficient to amount to a waiver of a vendor's implied lien, because in my judgment the circumstances in this case would be insufficient to justify the court in inferring that even such a lien was waived, and we may safely assume that the attorney's lien for his fees on the judgment he has obtained for his client will not be held as waived by circumstances, which do not indicate that it was the intention of the parties to waive such lien, at least as strong as would be required to justify such inference in the case of a vendor's implied lien, which has ever been so much discountenanced by the courts. The true principle to be applied in determining whether an attorney's lien for his fees in a case on a judgment he has recovered for his client exists, is that stated by Lord Eldon, and is: *that the lien exists, unless an intention, and a manifest intention, that it shall not exist, appears.* Does such manifest intention to waive this lien appear in this case? The taking of his client's bond for the fees certainly shows no such intention, for it is well settled that the

taking of the vendor's bond for the purchase-money is no waiver of a vendor's lien. No such intention can be inferred fairly from his taking from his client, Renick, a confession of judgment on this bond. Under the circumstances, under which this confession of judgment was actually taken, we cannot fairly infer that Patton intended to rely exclusively on this confession of judgment for his fees, as we cannot reasonably suppose that he was willing to take this as sole security, when he knew that Renick, his client, was utterly insolvent; and this he certainly knew, as it was fully disclosed in the suit of *Ford & Son, &c.,* v. *Renick, &c.,* in which he was a party. But if any doubt could exist in this case, as to whether Patton in taking this confession of judgment on

Renick intended to rely on it alone, to the exclusion of his reliance on the judgment or decree against Ludington, it is completely removed by the fact, that, at the very time he took this confession of judgment, he took an assignment of this judgment or decree against Ludington to pay his fees against Renick. It thus is made to appear clearly, that the parties did not intend that Patton should rely solely on this confession of judgment to secure his fees, but that both parties intended at the time, that he should still look to the judgment or decree of *Renick* v. *Ludington* as the means by which it was to be paid. As Patton's lien on this judgment against Ludington can only be held as waived by its being shown that he relied for the payment of his fees solely on this confessed judgment against Renick, it seems to me that there is a complete failure to show such waiver. So far from its being waived, the assignment of this Ludington judgment to him demonstrates that his claim to be satisfied out of it was not abandoned, but was intended by the parties to be expressly admitted, and its extent clearly defined. The lien of Patton therefore is still in full force.

It is claimed by the appellee's counsel, that this lien is subject to the rights acquired by Dunn and Reid and the other assignees of Renick by their assignments of the decree or judgments of *Renick* v. *Ludington*, as these assignments were made to them when they had no notice of the Patton's attorney's lien on this decree or these judgments. We have seen, that Patton's lien was subject to all equities which the defendant, Ludington, might have had against the plaintiff, Renick, and that had he paid this decree or these judgments to Renick before he had notice express or implied of the lien and claim of Patton, he would have been protected by the courts in such payment. But the lien of Patton would be recognized as superior to any offsets which Ludington subsequently acquired. See *Warfield* v. *Campbell*, 38 Ala. 527. But to make the lien of an attorney for his fees

1880
Special Term.

Renick *et al.*
v.
Ludington,
and
Ford & Son *et al.*
v.
Renick *et al.*

Syllabus 4.

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

on a judgment in favor of his client, which he has obtained, perfect against an assignee of his client, no notice of the existence of such lien need be given to the assignee. The assignment of a judgment is not a legal transfer of the judgment; it operates only as an equitable transfer; and upon well settled principles he must take this equitable assignment subject to all the equities which attached to the judgment when assigned. This is expressly decided in *Sexton et al.* v. *Pike*, 13 Ark. (8 Eng.) 193. The reasons for this conclusion are so satisfactorily set forth by Justice Scott in delivering the opinion of the court, that nothing which I can say can add aught to their force. There is really no hardship in this; for the attorney's lien on the judgment is not hidden, secret or concealed. It stands out in bold relief upon the record, not only giving the party, about to take an assignment of the judgment, means of informing himself whether the judgment has been satisfied, but also the name of the attorney for the plaintiff, of whom he may enquire, whether his fees have been paid. If he neglects to make such enquiry, he is guilty of gross negligence, and to this, and not to the law, should be attributed any loss he may sustain.

Syllabus 7.

The appellee's counsel insist, that as the appellant has only appealed from the decree of November 22, 1878, rendered in the two causes of *Renick* v. *Ludington et al.*, and *Ford & Son et al.* v. *Renick et al.*, which were then for the first time heard together, and that as the question involved in this appeal had been decided by the court in its decree of November 17, 1877, in the suit of *D. S. Ford & Son et al.* v. *Renick et al.*, in which the appellant was a defendant, the appellant was bound by the decision of the court then rendered, and that the court therefore in rendering the same decision in the decree appealed from necessarily committed no error, as the question then raised was *not adjudicated*. The decree of November 17, 1877, was but an interlocutory decree, and might there-

fore have been by proper proceedings corrected in the circuit court, if erroneous. But a complete answer to this position of the appellees' counsel is, that the only matter really adjudicated by the decree of November 17, 1877, was that the debts due to the appellees, Dunn and Reid, were paid, one of them in part and the other altogether. It is true, the commissioner had reported that these payments were made by the assignment of the the judgment of *Renick* v. *Ludington;* but in reaching this conclusion neither the commissioner nor the court acted upon the attorney's lien of Patton, or expressed any opinion with reference thereto, as it had never been called to the attention of the commissioner or court by Patton ; nor was he under any obligation to call the attention of the court to it in that cause. The fund which represented this judgment of *Renick* v. *Ludington* was under the control of the court properly only in the chancery cause of *Renick* v. *Ludington et al.;* and this was the only cause in which the court could properly decide to whom this fund was coming, whether to the assignees of Renick or to his attorney to satisfy his attorney's lien for fees. Patton properly called upon the court to decide it in that cause ; and because of the indirect effect which its decision had upon the other cause of *Ford & Son et al.* v. *Renick et al.,* the court properly heard the two causes together, and decided to whom the fund in *Renick* v. *Ludington* was to be paid ; and if the court erred in this decision, Patton had a right to appeal therefrom. It is true that the reversal of this decision may render it necessary for the circuit court to reconsider and correct the error in the cause of *Ford & Son,* &c., v. *Renick,* &c., arising from its having, as it now turns out, held that a larger portion of the appellees' debts were paid than perhaps on the facts now appearing it may consider, was really paid by these assignments. But this necessity imposed on the court to correct this injustice to the appellees in that cause, if any has really been committed, which this court does not decide the one way

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

1880
Special Term.

Renick et al.
v.
Ludington,
and
Ford & Son et al.
v.
Renick et al.

or the other, cannot operate to prevent the appellant from an appeal from an improper decision in another cause in a matter which could only be disposed of properly in this other cause.

I conclude, therefore, that so much of said decree of November 22, 1878, as decided that the defendant, J. F. Patton, by the assignment taken fixed the plan as well as the amount of his fee, and that in view of the facts in their answers he is not entitled to an attorney's lien against the assignees of the plaintiff, Renick, upon the debt mentioned in his petition, must be reversed, set aside and annulled, and also so much of said decree as is based on said error of said circuit court; and the appellant must recover of the appellees, John W. Dunn and of J. P. Reid and James A. Reid, administrators of J. J. Reid, to be levied of the estate of their intestate in their hands to be administered, his costs about his appeal in this court expended; and this court, proceeding to render such decree as the court below ought to have rendered, doth adjudge, order and decree that the defendant, J. F. Patton, is entitled to an attorney's lien upon the debt mentioned in his petition, and that such lien has priority over any of the assignees of B. F. Renick of portions of said debt; and this cause is remanded to the circuit court of Greenbrier, with instructions to so modify and correct the said decree of November 22, 1878, as shall make it conform to this prior right of J. F. Patton to have his claim set out in his petition first satisfied out of said debt named in his petition, and also to so modify and correct, if necessary, the decree of November 17, 1877, in the cause of *D. F. Ford & Son et al.* v. *B. F. Renick et al.*, and all other decrees in said cause or in the cause of *B. F. Renick et al.* v. *Samuel C. Ludington*, as shall make them consist with this priority of lien of J. F. Patton to his claim set up in his petition on the debt named in his petition; and these causes are to be further proceeded with in the circuit court of Greenbrier on the principles laid down in this opinion, and accord-

ing to the principles which govern courts of equity. But nothing in this decree is to be interpreted as affecting in any manner the priorities of any of the assignees of said Renick as among themselves, or the validity or the extent or meaning of any of said assignments, or as affirming or disapproving of any decrees in either of said causes determining any of these questions, or as affirming or disapproving the decision of the circuit court of November 17, 1877, so far as it held the debt due to Reid as paid, none of these questions being before this this court properly by this appeal, nor is their decision to be prejudiced or in any manner affected by this decree, except so far as it is necessarily done by giving to the claim of said Patton, as set up in his petition, a priority over all the assignees of said Renick.

THE OTHER JUDGES CONCURRED.

