# CHARLESTON.

ATLANTIC TERRA COTTA CO. v. MOORE CONSTRUCTION CO. *et al.*

Submitted December 17, 1913.    Decided January 13, 1914.

1. EQUITY—*Exhibits—Controlling Effect.*
   Documents exhibited with a bill, vouching the truth of the allegations thereof, are controlling in case of discrepancy. (p. 452).

2. MECHANICS' LIENS—*Debt Secured—Material Furnished Contractor.*
   As a general rule there can be no lien for material furnished a contractor not used and incorporated into the building or structure covered by the contract. (p. 454.)

3. SAME.
   Assuming that certain alleged exceptions to this general rule are established by the authorities cited, as where the owner refuses to permit the material to go into the building, or that labor was expended thereon at plaintiff's shop or factory on the faith of the contract, the facts here alleged do not present a case for their proper application. (p. 454).

4. SAME—*Material for Building—Promise to Pay Price.*
   The promise of the owner to pay to a subcontractor on account of the contract price on condition that material contracted for by such contractor is delivered will not bind the owner for material not delivered nor entering into the building or structure contracted for. (p. 456).

5. SAME—*Extent of Relief—Foreclosure of Mechanics' Lien—Personal Decree.*
   In this state, where the distinction between suits in equity and actions at law, as at common law, is still maintained, and a sub-

contractor fails in allegation or proof to establish a valid mechanic's lien, equity has no jurisdiction to retain his suit for the purpose of a personal decree in his favor against the owner or contractor for an alleged balance due him from the contractor.   (p. 457).

Appeal from Circuit Court, Kanawha County.

Suit by the Atlantic Terra Cotta Company against the Moore Construction Company and others.   From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Price, Smith, Spilman & Clay,* for appellant.

*Chilton, MacCorkle & Chilton,* for appellees.

MILLER, JUDGE:

The decree appealed from dismissed on demurrer plaintiff's original and amended bills, which sought foreclosure of its alleged mechanic's or material-man's lien for terra cotta furnished the Moore Construction Co., principal contractor, in the construction of an office building for and under a contract with Alderson and Stephenson, owners, situated in the City of Charleston.

The alleged lien, a copy of which is exhibited with the original bill, and vouched for the truth of the allegations thereof, purports a contract by plaintiff with the Moore Construction Co., principal contractor, not with the owners, and there is also exhibited with the bill a copy of said contract.   The bill also alleges that said material was furnished in pursuance to such contract with said contractors, and whereby plaintiff contracted to provide all the material and perform all the work for the delivery of the terra cotta f. o. b. its plant in New York, with freight allowed to Charleston, West Virginia; and the Moore Construction Co. thereby agreed to make payment for said material monthly on or before the 20th of each and every month for the material shipped the preceding month to the amount of 85% of the value thereof, final payment to be made within thirty days after the final shipment of the material contracted for.

And after setting forth the alleged failure of the Moore Construction Co., to make payments in accordance with the contract, and the subsequent negotiations by plaintiff's presi-

dent, preliminary to delivery of the final shipments of the material, for securing payment of the entire balance which would have become due on said contract, and an alleged agreement of the contractor, and of the owners to pay $5,000.00 on account thereof, and failure on their part in that behalf, said bill alleges compliance by plaintiff with the statute in filing with the owner within thirty five days from the time it ceased to furnish said material an itemized account thereof "including the two car loads of material which were never accepted by the said Moore Construction Company," verified by the affidavit of its president, together with the notice of same as required by statute, a copy of which purports to be exhibited with the bill. And it is also alleged that within sixty days after it ceased to furnish said material plaintiff filed with the clerk of the county court a duplicate copy of said account, affidavit and notice, which was recorded in Mechanic's Lien Record No. 1, at page 187, and a further allegation is that there is due plaintiff from the Moore Construction Company, for the material so furnished, including the two car loads not accepted by it, $5,995.19, and interest. And this allegation is followed by another that said Alderson and Stephenson are obliged to pay it the sum of $5,000.00, a part of the amount so demanded.

From a copy of the alleged lien exhibited with the bill it appears that the first item or shipment was on June 17, the last items, delivered, October 17, followed by three items, one of October 17, and two of October 19, all marked opposite, "not used", the year nowhere appearing therein, but the bill alleges the year 1910.

The affidavit of the president to the account was taken in New York, December 19, 1910, and the certificate of the clerk of the county court of New York, as to the official character of the officer taking the affidavit, is dated December 22, 1910, and the return thereon shows service of the account and notice on Alderson and Stephenson, on December 20, 1910, the affidavit thereto appearing to have been made before the officer December 27, 1910; the exact date of the filing in the clerk's office nowhere appearing. There is here apparent conflict, for if the account and notice were in New York on December 22, 1910, the date of the clerk's certificate attached, it could

not have been served on Alderson and Stephenson on December 20, 1910.

We have already decided that documents, exhibited with a bill, vouching the truth of the allegations thereof, are controlling in case of discrepancy. *Houston Lumber Co.* v. *Railway Co.,* 69 W. Va. 683; *Board of Education* v. *Berry,* 62 W. Va. 433; *Richardson* v. *Ebert,* 61 W. Va. 523; *Loar* v. *Wilfong,* 63 W. Va. 306; *Phillips & Sons* v. *Roberts,* 26 W. Va. 783; *Lockhead* v. *Berkeley Springs W. & I. Co.,* 40 W. Va. 553, 556. Observing this rule we would have to sustain the ruling of the court below on the demurrer to the original bill, for on the face of the account and notice, and treating October 19, as the date of the last delivery of material, and December 20, as the date of service on the owners, service was not had on them, nor delivery of the duplicate thereof to the county clerk, until more than sixty days after plaintiff ceased to furnish the material under the contract, wherefore the lien was invalid on its face and in fact. By the very terms of the statute, section 3, chapter 75, Code 1906, neglect or failure of the material-man to notify the owner within thirty five days after he has ceased to furnish material "shall release the owner from all responsibility, and his property from all lien for any item therein done or furnished prior to the said notice." Nor would such lien be good as upon a contract with the owner for said material under section 2, chapter 75, Code 1906, for by section 4 of said chapter, "Every lien provided for by the second and third sections shall be discharged unless the person desiring to avail himself thereof shall, within sixty days after he ceases to labor on, or furnish material or machinery for such building or other structure, file with the clerk * * * * a just and true account of the amount due him, after allowing all credits," &c.

By the amended bill, however, plaintiff undertook by allegation to correct these alleged errors in dates, and it is insisted that these alleged errors in dates do not invalidate the lien, and that the correct dates can be shown in pleadings and proof. For this proposition the following authorities are cited and relied on. 27 Cyc. 201, and cited cases; *Treusch* v. *Shryock,* 55 Md. 330; *Johnson* v. *Otto,* 105 Iowa 605; *St. Croix Lumber Co.* v. *Davis,* 105 Iowa 27; *Union Trust Co.* v. *Casserly,* 127

Mich. 183; *Coughlan* v. *Longini,* 77 Minn. 514; *Miller* v. *Condit,* 52 Minn. 455; *Althen* v. *Tarbox,* 48 Minn. 18; *Linne* v. *Stout,* 41 Minn. 483; *Baltis* v. *Friend,* 90 Mo. App. 408; *Brockmeier* v. *Dette,* 58 Mo. App. 607; *Slight* v. *Patton,* 96 Cal. 384.

Accepting for the present the correctness of this proposition, let us see whether the amended bill presents a case for its proper application. The account and notice, filed with the owner, was sworn to by the plaintiff's president; the bill is unsworn to. The amended bill alleges that the dates given in the account filed, except as to the last four car loads, are the dates of the shipments, not the dates of the delivery of the material in Charleston. By the terms of the contract the material was to be delivered f. o. b. cars at plaintiff's plant, with freight allowed to destination. Of the last four loads it is alleged that one was shipped October 15th, two October 17th, one October 19th, 1910; that these four loads were shipped not to the contractor but to plaintiff's own order at Charleston; that the load of October 15th was not in fact delivered to the Moore Construction Company until October 28th; and that one of the loads of October 17th was likewise not delivered to said company until October 28th; that the remaining load of October 17th, and the one of October 19th, were never accepted by the construction company, because, as this bill alleges, before the shipment of said four car loads of material, said company "had failed and refused to make the payments as required by said contracts" and because "said company and the said Alderson and Stephenson * * * finally refused to comply with their contract of November 17th, 1910, and" because "said company * * * finally refused to accept said material on said date, as fully set forth in paragraph 6 of plaintiff's bill of complaint." Wherefore, it is further alleged in the concluding paragraph of the amended bill, plaintiff " did not cease to perform labor and deliver materials to said Moore Construction Company under said contract with it and said Alderson and Stephenson until November 17th, when it was finally advised by the Moore Construction Company that it would not accept said material."

Going back to the sixth paragraph of the original bill, to

which plaintiff refers us for a statement of the manner in which said company is alleged to have refused acceptance of said material, we find it alleged that: "Although the plaintiff agreed to deliver the two remaining cars of terra cotta to the Moore Construction Company, as soon as the other payment of $5,000.00 was made as agreed, the said Moore Construction Company and the said Samuel Stephenson, representing said C. M. Alderson and himself, refused to make said payment, and accordingly the said terra cotta remained on the cars at Charleston, undelivered, until November 17th, following, when the said Moore Construction Company notified the plaintiff that unless the terra cotta was delivered at once, it would complete the building with other material, which was accordingly done. And said terra cotta, at the direction of the plaintiff, was unloaded on the ground, at Charleston, West Virginia, where it still remains, to be delivered to the Moore Construction Company on payment by it of the amount due the plaintiff as hereafter shown."

It is apparent that if we treat October 28th as the date of delivery of the last material that went into the construction of the building, still the account and notice would not have been delivered to the owners within thirty five days thereafter, for the time which elapsed between October 28th and December 20th, the date of said service, was fifty three days, and as a lien of a sub-contractor, therefore, it was and is invalid, as to the owner, by the force of the statute. But upon the theory of a contract with the owner on October 17th, and delivery on October 28th, the lien for the material actually delivered, and which actually entered into the construction of the building, if actually delivered on October 28th, would have been filed in the clerk's office and recorded in time. But for reasons to be hereinafter given we are unable to agree with counsel in their interpretation of the account and notice filed, and the allegations of the original and amended bills, that plaintiff had any such contract with the owner for the furnishing of said material.

The general rule, that there can be no lien for material furnished a contractor not used and incorporated in the building or structure, is conceded. This proposition is affirmed in our cases of *Cushwa* v. *Improvement L. & B. Ass'n.*, 45 W.

Va. 490, and *Lunsford & Withrow & Co.* v. *Wren,* 64 W. Va. 458. But it is contended that there are exceptions to this general proposition; that one of these, applicable here, is where materials have been prepared or furnished as ordered, and the owner refuses to accept or use them; that another exception is that where work has been actually performed in accordance with the contract there should be no loss of lien if the work has been stopped or abandoned in consequence of the default of the owner; that another exception is, where work has been done by a contractor under a contract with the owner on material, at the yard or shop of the contractor, with the express or implied consent of the owner, in which event it is said the work of preparation and manufacture is to be deemed a part of the construction or furnishing, and in which case it is immaterial, as between the parties to the contract, with respect to a contractor's right to a lien subject to the final completion of the contract, that the work was not done on the premises. For these several exceptions to the general rule counsel cite and rely respectively on 27 Cyc. 46, and notes; *Howes* v. *Reliance Wire-Works Co.,* 46 Minn. 44; and *Burns* v. *Sewell,* 48 Minn. 425; *Huttig Bros. Mfg. Co.* v. *Denny Hotel Co.,* 6 Wash. 122.

Assuming these exceptions to be established by the authorities cited, is a case here presented for their proper application? We do not think so. As to the first of these exceptions, it is nowhere alleged in the original or amended bills that the owner refused to accept or use the materials, nor is there any allegation, specifically, or by implication, charging that the contractor refused to accept or use the material called for by the contract. The allegation that the Moore Construction Company notified plaintiff that unless the terra cotta was delivered at once it would complete the building with other material, and that the two car loads not delivered or used were never accepted by said company, and the reasons given in the amended bill why plaintiff refused to comply with its contract, are not sufficient to bring the case within this exception to the general rule. On the contrary we think these and other allegations of the bill clearly imply a demand for the delivery of the material, and a request that the same might be furnished and used in the construction of the build-

ing in accordance with the contract. The bill concedes, we think, a refusal upon the part of the plaintiff to furnish the material not delivered, or permit it to go into the construction of the building, except upon the condition of full payment of the price, not in accordance with the contract originally made, but contrary to the contract, which contemplated monthly payments, and the withholding of 15 per cent of the price for thirty days after final completion of the contract. We do not understand how a sub-contractor can thus deliberately refuse delivery of the material and the use of it in the construction of the building, and thereafter assert a valid lien upon the property. If he wishes the protection which our statute gives a material-man why should he decline to deliver the material or permit it to go into construction?

Nor is a case presented for the application of the second alleged exception. In the case of *Howes* v. *Reliance Wire-Works Co., supra,* relied on, the contract was made directly with the owner, for a wire enclosure for an elevator to be made and installed in the building. The controversy was between the purchaser of the property, who had notice of the contract and purchased subject to all liens and claims of liens thereon. The contractor tendered performance of the contract which was refused by the purchaser, and he forbade him putting the structure in the building. No such case is presented here. Quite the contrary.

Nor have we here a case coming under the supposed third exception. The claim here is not for work done on material at the yard or shop of the contractor, under a contract with the owner; the contract here is that of a sub-contractor for the finished product, and who has declined to deliver the material contracted for or to suffer it to go into the construction of the building, except upon new terms and conditions. So we hold that our case has not been brought under any of these alleged exceptions.

Lastly, as to the theory of plaintiff of a new contract with the owner, as of October 17th, 1910. The only foundation for this theory is the fact alleged, that at that time the owners promised to pay $5,000.00, for the Moore Construction Company, on the construction company's contract, by a given date, on condition that the material would be delivered and allowed

to go into the building. It is apparent that this was no new contract with the owner for furnishing the material. It amounted to no more than a promise of payment on account for the benefit of the contractor. If plaintiff had delivered the material on the faith of that promise, it might be a question whether or not the owners would be liable for the value of the material as upon an independent contract. *Howell* v. *Harvey,* 65 W. Va. 310. In that case the job contracted for was completed, and the owner held liable on his promise. No such case is presented here. Accordingly we do not see how, upon any rules or principles applicable to our mechanic's lien law, and decisions of this court interpreting the same, the alleged lien of plaintiff can be sustained on the theory of a contract with the owner of the building. All the proceedings by the plaintiff, before and subsequently to the supposed new contract, were upon the theory of a sub-contractor furnishing material under a contract with the principal contractor, and not one with the owner. The account and notice was upon this theory, and such is the theory of the bill, except as it was attempted to be changed by the amendment thereto. In *Page & Son* v. *Grant,* 127 Iowa 249, one of the cases cited and relied on by plaintiff's counsel, it was attempted, as in this case, to hold the owner liable, as upon a contract made directly with him, upon an alleged promise on his part to pay the alleged claim. The third point of the syllabus in that case is: "Where an action by materialmen is based on the theory that they were subcontractors, a recovery can not be had against the owner on the ground that material was furnished directly to him or that he promised to pay for the same."

But it is contended that plaintiff was entitled to a personal decree, notwithstanding it may have been rightfully denied a mechanic's lien, and that the bill was maintainable for relief on this ground, on the theory that having acquired jurisdiction for one purpose a court of equity will go on to give complete relief. For this proposition our case of *United States Blowpipe Co.* v. *Spencer,* 40 W. Va. 698, and 27 Cyc. 432, Rockel on Mechanics' Lien, section 284, and *Johnston* v. *Bunn,* 108 Va. 490, are cited and relied on.

The proposition stated assumes, necessarily, that jurisdiction in equity has been acquired upon some ground of equit-

a'ble cognizance. We have decided already that the bill and amended bill fail to state a case for equitable jurisdiction. It is undoubtedly the rule that where equity has obtained jurisdiction of a cause for any purpose it may go on to do complete justice, even though this may involve the adjudication of legal rights. But in order to make this rule applicable equity must have first obtained jurisdiction. If the bill fails to make a case for equitable relief, how can it be said that equity has acquired jurisdiction for any purpose? Our statute, section 12, chapter 75, Code 1906, says that if the lien is established in favor of the creditors whose claims are represented in such suit, "the court may, in addition, give a personal decree in favor of such creditors for the amount of their claims against any party as to whom they may be established; such decree to have the effect of, and to be enforced as other decrees for money." Does not this statute imply, as a condition precedent to a personal decree, that the lien of the claimant be first established? The only way in which, under our statute, such lien may be enforced is by bill in equity, as provided by section 10, of said chapter 75, of the Code. *Blowpipe Co.* v. *Spencer, supra,* is not authority for rendering a personal decree where the lien fails. We have examined practically all the decisions cited for the general proposition in 27 Cyc. These decisions are mainly, if not entirely, from Code states, where the distinctions existing at common law between suits in equity and actions at law have been abolished, and the forms of action are the same in all kind of cases. In New York, where the rule was formerly different, the general rule stated in Cyc. has been carried into the statute in express terms; that is, personal judgment has been made permissive by section 3412, Code Civ. Proc. *Koeppel* v. *Macbeth,* 89 N. Y. Supp. 969. Where as in this state the distinctions between suits in equity and actions at law are still maintained the rule of the Code states is inapplicable. *Baer* v. *Fidelity & Deposit Co.,* 64 C. C. A. 428; *Green* v. *Sprague,* 120 Ill. 416. The rule is not uniform even in Code states. *Clark* v. *Ralls,* 50 Iowa 275. Nor where relief is administered in actions at law by virtue of the statute. *Clark* v. *Ralls, supra; Hursey* v. *Hassam,* 45 Miss. 133; *Ming Yue* v. *Coos Bay R. R. Co.,* 24 Ore. 392. In *Phillips' & Sons* v.

*Roberts, supra,* it was decided that if the bill showed upon its face that the suit was not begun within six months the bill was properly dismissed on demurrer. Why should this rule not apply also where for any other defect in the proceedings the lien has been lost? We see no reason for distinction. In the case of *Johnston* v. *Bunn, supra,* point 1 of the syllabus, the decision seems to have turned on the question of the good faith of the plaintiff in instituting suit to enforce the alleged lien. In that case the decree below, however, was reversed and remanded because the personal decree had been pronounced before it had been ascertained by a commissioner or otherwise that the contract had been completed in accordance with the terms of the contract. This case has been annotated in 19 L. R. A. 1064, the scope of the note being distinctly limited to the concrete case presented at bar, namely, "whether, where a complainant fails to state or prove a case which will entitle him to equitable relief, a court of equity will proceed, for the purpose of settling the entire controversy, to decree relief to which he appears to be entitled, but which might have been obtained in a court of law." So far as we are able to observe practically all the cases, distinctly in point, are reviewed in this note, including the case of *Walters* v. *Farmers Bank,* 76 Va. 12. And based upon these decisions, which we will not undertake to review here, we think the same rule, as applicable to mechanic's liens, is there correctly stated to be, "that where a case for relief in equity fails, a court of equity is without jurisdiction to award other relief by way of disposing of the entire controversy; unless, indeed, it appears that the remedy at law will be inadequate." And, as the annotator there states, that this rule is applicable where the pleadings are defective. as in the case at bar, or where the proof fails to establish the case. This case, distinguished and differentiated in this note, in, some expressions seems to support the appellant's theory, but it is not in harmony with *Robertson* v. *Hogsheads,* 3 Leigh 667, nor with *Boston Blower Co.* v. *Carman Lumber Co.,* 94 Va. 94. In the latter case the court said: "Where a plaintiff is properly in equity that court will often times, in order to prevent a multiplicity of suits and do complete justice, give such relief as is usually afforded only in a court of law, but the plaintiff must be in court upon a case

properly cognizable in a court of equity.'' Nor will our case of *Evans* v. *Kelley,* 49 W. Va. 181, support appellant's proposition. We think it distinguishable in principle, although *Walters* v. *Bank, supra,* is cited. In that case the suit was against a married woman to charge her separate estate, cognizable only in equity, and for which no personal decree could be rendered against her at law. Her surety being a party, it was held that a personal decree should be rendered against him, though the right to enforce the debt against her was denied. Another Virginia case, not cited, which we have found, is that of *Carter* v. *Keeton & Coleman,* 71 S. E. 554. In that case the suit was to enforce an alleged mechanic's lien where a contract had been made for repairs and improvements by a tenant, without the knowledge and authority of the landlord; and it was held, following *Johnston* v. *Bunn, supra,* that though no decree could be rendered against the landlord, there should be a personal decree against the tenant for the value of the labor and material furnished. This case may perhaps be distinguishable from the case at bar, but whether so or not, we cannot follow the line of the Virginia decisions, in so far as they may go contrary to the general rule, which we think the correct one. In this state the distinction between suits in equity and actions at law is still maintained inviolate.

For the foregoing reasons the decree below will be affirmed.

*Affirmed.*