# CHARLESTON

## FISHER *v.* MYLIUS.

## Submitted February 12, 1907.   Decided April 17, 1907.

1 ATTORNEY AND CLIENT—*Lien on Judgment.*

An attorney has a lien, on a judgment obtained by him for his client, for his services in the case, the amount whereof is fixed by special contract, although payment thereof cannot be had under the terms of the contract until the money is actually recovered, and no money can be made under an execution on the judgment. (p. 20.)

2. SAME—*Duty of Attorney—Enforcement of Judgment.*

An attorney having such a lien upon a judgment, is not bound to prosecute, without additional compensation, a suit in equity, to enforce the lien of the judgment upon the debtor's land, or to set aside fraudulent conveyances, in order to realize the money to which the judgment entitles his client, and his failure to do so does not destroy his lien. (p. 23.)

3. SAME—*Assignment of Lien.*

Such lien is assignable and may be enforced by the assignee, though the assignor, by his assignment, has lost his right to enforce it. (p. 23.)

4. SAME—*Enforcement of Judgment —Expense.*

If the client, in order to realize the money due upon the judgment, for the common benefit of himself and the attorney, necessarily expend money in the payment of costs, and counsel fees, in the prosecution of a suit in equity for such purpose, the attorney must contribute ratably to such expense and take his percentage out of the net amount realized by the client from the property of the judgment debtor. (p. 25.)

(BRANNON, JUDGE, Absent.)

, Appeal from Circuit Court, Upshur County.

. Bill by W. H. Fisher against Charles E. Mylius and others. Decree for complainant, and defendant Mylius appeals.

*Reversed. Remanded.*

W. B. MAXWELL and D. H. HILL ARNOLD, for appellant.
C. C. HIGGINBOTHAM, for appellee.

POFFENBARGER, JUDGE:

The appeal of Charles E. Mylius charges error in a decree, pronounced against him by the circuit court of Upshur county, in favor of W. H. Fisher, for the sum of $392.57, upon the petition of said Fisher, filed in the chancery cause of said Mylius against James L. Smith and others. The demand set up in the petition is for counsel fees, alleged to be due said Fisher as assignee of John S. Fisher, under and by virtue of a written contract between Mylius and said John S. Fisher, which is set forth in full in the report of the case of *Fisher* v. *Mylius*, 42 W. Va. 638. It showed that said John S. Fisher as the attorney for Mylius, recovered a judgment for the sum of $2,200.00, against the Smiths, on the 15th day of October, 1887, and that the collection of said judgment is the object of the chancery suit in which said petition was filed, and claimed a lien for fifteen per cent of any money that should be collected by virtue of said suit. By the agreement above referred to, Mylius bound himself to pay to John S. Fisher, for services rendered and to be rendered in the action at law then pending, a certain fee of $50.00 and in addition thereto fifteen per cent. of the damages which might be recovered in the action, and the petition purports to have exhibited said contract as a part thereof. Mylius' answer shows, among other things, that the chancery cause, instituted for the purpose of subjecting the real estate of James J. and Floyd G. Smith to sale for satisfaction of the judgment and costs mentioned in the petition, was instituted, managed and conducted by S. V. Woods, as attorney for appellant, without any aid or assistance therein from either John S. Fisher in his lifetime, or W. H. Fisher since his, John S. Fisher's death, said Woods having been the only counsel. The cause was referred to a commissioner to ascertain and report what money has been

collected in the cause and applied on Mylius' claim, what amount, if anything, was due Fisher on account of said money, and any other pertinent matters deemed material by himself, or particularly requested by the parties, or any of them. His report showed the amount applicable to Mylius' debt to be $2,114.05, and the amount due Fisher to be $390.99, and declared said sum to be a lien on said fund. To this report, Mylius excepted, denying the right of Fisher to any decree for any sum whatever. It appears, from the testimony, that John S. Fisher prosecuted the claim of Mylius only to the extent of recovering judgment. Upon this judgment, nothing was realized by execution. The circumstances were such as to render it necessary to proceed against the real estate of the judgment debtors, in order to realize any money on the claim. Fisher never instituted any such suit, but, assuming that he had performed all the service required by his contract of employment, demanded payment of fifteen per cent. of the face of the judgment. For this, he instituted an action of *assumpsit*, in which he recovered a judgment several years ago, which was reversed by this Court, as shown by the report of the decision found in 42 W. Va. 638. The plaintiff in that action never availed himself of the new trial allowed him on the reversal of the judgment, but waited until Mylius, through his new counsel, instituted his suit in equity, to subject the real estate of the Smiths to the payment of his debt, the nature and result of which will be seen by reference to *Mylius* v. *Smith*, 53 W. Va. 173, and in that suit, filed his petition, claiming a lien on the fund.

In *Fisher* v. *Mylius*, 42 W, Va. 638, this Court construed the contract under which Fisher claims, and declared the law applicable to it in the following terms: "A client under a contract whereby he agrees to pay an attorney for the prosecution of an action a fee of fifty dollars and also a percentage of the damages which he may 'recover' in the action, is not liable for such percentage of the judgment obtained, but only for a percentage of the damages received." Speaking of the contract, JUDGE DENT, delivering the opinion of the Court, said: "The meaning of this language is plain and unambiguous, and that is that the defendant, out of the moneys received by him by reason of his suit, was to pay the

plaintiff fifteen *per cent.* thereof.   Until he receives the damages, he can not pay the plaintiff fifteen *per cent.* thereof.   He could pay the plaintiff out of other funds a sum equal in amount to fifteen *per cent.* of the judgment obtained, but this would not be, except in amount, fifteen *per cent.* of the damages recovered.   It is admitted that defendant never received any damages."   In further elaboration of the views of the Court, JUDGE DENT said:   "It is true that plaintiff did not guaranty the solvency of the defendants' action for damages, but he did agree to take his fifteen per cent. additional and contingent fee out of the damages recovered in the action, and he should abide by his contract."

The substance and effect of the decision reported in 42 W. Va. 638, is, that the action was prematurely brought.   It does not preclude a right of recovery in Fisher of fifteen per cent. of such sum of money as has since been received by Mylius.   The judgment was reversed because, at the time of the recovery thereof, the defendant had received no part of the judgment.   On the recovery of the original judgment, Fisher had a lien for the amount that Mylius had agreed to pay him for his services.   He had then performed what the contract bound him to do.   His contract was fully performed, but the contingency upon which the obligation, on the part of Mylius to pay arose, had not yet happened.   This conclusion seems to be fully sustained by principles announced in *Renick* v. *Ludington*, 16 W. Va. 378, which holds that "An attorney has a lien on the judgment or decree, obtained by him for his client, for services and disbursements in the case, whether the amount of his compensation is agreed upon or depends upon a *quantum meruit.*"   The authorities, English and American, from which this rule has been deduced, are cited and analyzed by JUDGE GREEN in the opinion in the case from which the above quotation has been made, and no good purpose would be subserved by again setting them forth here.   It is firmly settled as law throughout this country.   After the rendition of said judgment, the defendants therein, having notice of the attorneys' lien, could not have satisfied it by payment of the judgment creditor to the prejudice of his attorney.   Had they done so, they would have been bound to pay it over again to the extent of the

attorney's interest therein. Had the amount been paid upon execution, the attorney would have been entitled to his fees out of the amount so made. Execution being unavailing to bring in the fund, a suit in equity to subject the real estate of the defendants became necessary. Though, without such proceeding in equity, nothing would have been realized for either the attorney or his client, the judgment at law was beneficial to the client. The acquisition thereof was an essential step; for, without it, the suit in equity could not have been maintained. The original cause of action arose out of a wrong and, until the recovery of judgment, there was no debt, and, hence, no basis for a proceeding in equity. This completely answers the objection that the fund was not created by Fisher's services. By means of his services, his client's right to demand from the defendants in the action the sum of $2,200.00 was vindicated and established. And, to that extent, his services contributed. The contract, fairly and reasonably construed, did not bind the attorney, without additional compensation, to prosecute a new and additional suit, one requiring as much labor as the action referred to in the contract. On the recovery of the judgment, the client had a right to demand, from the defendant, 85 per cent. thereof and the attorney 15 per cent., as against his client, and each of them had the right to institute and prosecute such further proceedings as were necessary to enforce satisfaction of the judgment. The impossibility of doing so without further litigation did not destroy the attorney's lien, nor did it impose upon the attorney the duty of conducting such litigation without additional compensation. This proposition seems to have been clearly enunciated in *Renick* v. *Ludington*, point 2 of the syllabus in which reads as follows: " This lien includes not only the amount necessary to pay for his services and disbursements in the case, in which the judgment or decree is rendered, but also the amount necessary to pay for his services and disbursements in any other case, so connected with it as to form the basis on which such judgment or decree is rendered, or essential to the realizing of such judgment or decree." This rule was deduced by this Court from the case of *Newbert* v. *Cunningham*, 50 Me. 231, holding as follows: " Until the rendition of judgment in an original suit, the attorneys lien does

not attach; but when judgment has been obtained, an execution issued, and the lien has attached thereto, it extends to suits arising from, and incidental to the enforcement of the judgment.'' For the proposition laid down there, the court cited *Martin* v. *Hawkes*, 15 Johns. 405; *Wilkins* v. *Batterman*, 4 Barb. 48; and *Hobson* v. *Watson*, 34 Me. 20, which seem to fully sustain it.

Loss of the lien by Fisher's failure to prosecute the chancery suit and bring the money into court is asserted by counsel for the appellants, upon the authority of *Adams* v. *Milling Co.*, 38 Fed. Rep. 281, and *Construction Co.* v. *Township of Gill's Creek*, 48 Fed. Rep. 145, each denying, to the attorney, any lien upon a fund brought into the federal court, for services rendered by him in and about the same matter in a state court. In the first case, the reason for this conclusion is not stated; in the other, a reason assigned is that the court cannot extend its protection to services rendered in another wholly distinct jurisdiction. It suffices to say that the only reason assigned for this holding has no application here. The services for which the lien is claimed in this case were rendered in the same jurisdiction and in the same court in which the fund has been collected, and it does not appear that the attorney, in failing or refusing to render further service, without additional compensation, was in fault. Although he was not entitled to demand or have the contingent fee for which he had stipulated, his premature demand and action therefor was not a refusal to perform service, to the rendition of which he was bound by the contract. It had already been performed. It seems that, after the acqusition of the judgment, a controversy arose between the attorney and his client, as to whether he was bound to perform further service without additional pay, and as to whether he was then entitled to receive the contingent fee. The client was himself rather at fault, in that he, misapprehending the legal effect of the contract, demanded service under it to which he was not entitled. The authorities relied upon by counsel for the appellant as sustaining their position are not applicable. The decisions all show instances of failure to prosecute the action to judgment. Until judgment has been recovered, the attorney has not, by the common law, any lien. When, without just

cause, he abandons the case of his client, without having acquired judgment, he is denied any lien for two reasons, one of which is failure to perform his contract, which is entire, and the other cessation of his service before any lien was acquired. In such case, the judgment is not the fruit of his services. It is contended here that, as the decree in this case was not procured by the services of Fisher, he can assert no lien. Though his services did not procure the decree, they contributed thereto and the decree is the fruit of the combined, or successive, services of Fisher and Woods; and, moreover, his lien attached to the judgment and still clings to it. Had Fisher prosecuted the chancery cause and obtained the decree, he would have had his lien for services in both the action at law and the suit in equity. *Renick* v. *Ludington*, cited. He is none the less entitled to his lien for services in the action at law because some other person rendered, in the equity suit, services which he was not bound to perform.

It is also insisted that John S. Fisher waived or abandoned his lien by the assignment of his fees to W. H. Fisher, the appellee. Much authority is cited to show that an attorney, by assigning his fees, relinquishes or waives his lien upon the judgment; but none which intimates that the lien is not assignable. While the attorney, to whom the lien accrued, loses the benefit thereof by an assignment of it, the assignee may undoubtedly assert it. No decision is cited to the contrary of this proposition and no reason is perceived why the fees and the lien securing them are not assignable.

We are of opinion, however, that the decree is for a larger sum than the appellee is entitled to. In order to render the judgment fruitful, it became necessary for Mylius to pay to S. V. Woods a certain fee of $200.00, and to stipulate with him for the payment, in addition thereto, of 25 per cent. of the amount that should be recovered, for his services in the prosecution of the chancery suit. This expense was incurred for the benefit of both Mylius and Fisher, and, together with all other expenses properly incurred by Mylius in the realization of the fund from the property of the judgment debtors, must be paid out of the same before Fisher can have his contingent fee. In other words, he must take fifteen per

cent. of the net amount realized by Mylius by virtue of the judgment. This makes them bear ratably expenses necessarily incurred for their common benefit, agreeably to equitable principles. As an attorney's charging lien is a mere equitable right to the aid of the court in obtaining his fees, (Jones on Liens, sections 153 to 157, inclusive), it must be governed by the principles of equity. "By the natural law it is not right that any one should grow rich by the detriment and injury of another." This is a rule of equity. *Williamson* v. *Jones*, 43 W. Va. 562, 592. He who asks equity must do equity. This error amounts to more than $100.00 and will reverse the decree. As said costs have not been ascertained and reported by the commissioner, and a proper decree, under the principles herein stated, would involve calculations and the statement of an account, the case should go back to the circuit court for the rendition of such decree.

For the reasons stated, the decree will be reversed, the cause remanded, and the appellee required to pay the appellant his costs in this Court.

*Reversed. Remanded.*