JOE PERKINS *v.* JOSEPH HALL *et al.*

(No. 9154)

Submitted September 23, 1941. Decided November 25, 1941.

*Howard & Howard*, for appellant.

*Samuel Solins, W. H. Ballard* and *Lewis M. Francis*, for appellees.

Fox, Judge:

About August, 1924, plaintiff, Joe Perkins, then a resident of McDowell County, West Virginia, made a visit to his sister, Lista Hall, the wife of Joseph Hall, who then lived in Marion, Ohio. Shortly prior to this visit, Perkins had suffered the loss of a leg, and was in financial straits. He was seeking some occupation by which he could provide a livelihood for himself and wife. He learned that a restaurant in Marion was for sale, and after some negotiations with the owner the same was purchased at the price of $2,000.00. Under the terms of the purchase, he was required to pay $1,000.00 in cash and the residue in monthly installments of $100.00 each. The $1,000.00 cash payment was secured by a loan from the Marion Savings Bank, for which Perkins, Joseph Hall and Lista Hall executed to said institution their note for $1,000.00, dated September 29, 1924, payable six months after date, which note contained this provision:

> "And we hereby authorize and empower any Attorney at Law of any Court of Record, at any time after the above note becomes due, to appear for us, or any of us, without process, in any Court of Record in the State of Ohio, or elsewhere, and confess a judgment for the said amount, interest and costs in favor of the payee,

legal holder, indorsee, or assignee hereof, and release all errors which may accrue in the rendition of such judgment. * * *."

A chattel mortgage was executed by Perkins to secure the payment of the ten deferred purchase money notes, and a second chattel mortgage given to secure the payment of the note to the Savings Bank both covering the restaurant property so purchased. Perkins operated the restaurant for about two months, paid two of the $100.00 notes and then, for reasons which are in dispute, he gave up the restaurant, left Marion and returned to West Virginia, where he has since resided. Lista Hall and her husband operated the restaurant a short time, two weeks at the outside, when it was surrendered to the original owner, Beck, who afterwards sold the same to one Murphy, and out of the proceeds of the sale satisfied the remaining deferred installments of purchase money then due him. On March 2, 1925, twenty-seven days before the $1,000.00 note held by the Marion Savings Bank was due, Joseph Hall and Lista Hall paid said note, and at that time the Savings Bank made the following indorsement on the back thereof: "Joseph Hall and Lista Hall, accommodation makers having paid this note, the same is endorsed to Joseph Hall and Lista Hall without recourse." On the 30th day of January, 1933, Joseph Hall and Lista Hall obtained a judgment on said note for the sum of $1,832.15, in the Court of Common Pleas of Marion County, Ohio. This judgment was obtained by a confession made by a member of the bar of said Court, under the provisions of the note quoted above. There was no other appearance on behalf of Joe Perkins, he was not served with process, and had no notice of the action prior to the date the judgment was entered. In the year 1936 Joseph Hall and Lista Hall instituted, in the Circuit Court of McDowell County, West Virginia, their action in debt on the judgment aforesaid, whereupon Perkins instituted this suit for the purpose of enjoining the further prosecution of said action at law.

Plaintiff's bill sets up the transactions with reference to the purchase of the restaurant, as outlined above. It al-

leges that just prior to leaving Marion, Ohio, and returning to West Virginia, he, the plaintiff, entered into an agreement with Joseph Hall and Lista Hall, by which they took over the restaurant, and assumed all liabilities in connection therewith, including the amount due the Marion Savings Bank; and it is further averred that in securing the judgment on the said $1,000.00 note, the said Joseph Hall and Lista Hall perpetrated a fraud which rendered said judgment void. Primarily the bill is based upon these allegations of fraud, but the bill also avers that by "payment by the said Joseph Hall and Lista Hall of the $1,000.00 note, as they had greed to do, the note became extinguished for all legal purposes whatsoever," and further averred, referring to the suit in which the said judgment was obtained, "that no process in said suit, notifying him of the bringing of the same or the pendency thereof, was ever served upon this complainant; that he never at any time appeared in person or by attorney in said suit; that he never submitted himself to the jurisdiction of the court wherein the said suit was instituted and prosecuted to judgment; that he never authorized any attorney or other person to appear for him or in his behalf in said suit or for any purpose whatever, and especially, that he never authorized any attorney or any person to appear in his behalf and confess judgment against him, as was done or undertaken to be done in said suit." In the prayer of the bill, referring to the fraud complained of, it is stated, "and that, for this reason, the said court never obtained or had jurisdiction over this complainant in said proceeding." The prayer is that Joseph Hall and Lista Hall be restrained and inhibited from further prosecution of their action at law in the Circuit Court of McDowell County, and that they be required to deliver to the plaintiff possession of the $1,000.00 note, dated September 29, 1924. The Circuit Court of McDowell County, upon a full hearing of the cause, denied plaintiff any relief and dismissed his bill, from which action Perkins prosecutes this appeal.

Joseph Hall and Lista Hall rely upon Section 1, Article IV of the Constitution of the United States, which pro-

vides that, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State * * *." This Court, in *Coleman* v. *Waters,* 13 W. Va. 278, in a suit involving a judgment entered and rendered as confessed pursuant to the laws of the State of New Jersey, recognized the force and effect of this constitutional provision, and said provision as applied to other judicial acts of sister states has been recognized and made effective by numerous and subsequent decisions of this Court. *Gilchrist* v. *Land Co.,* 21 W. Va. 115, 45 Am. Rep. 555; *Crumlish's Administrator* v. *Central Improvement Co.,* 38 W. Va. 390, 18 S. E. 456, 23 L. R. A. 120, 45 Am. St. Rep. 872; *Roller* v. *Murray,* 71 W. Va. 161, 76 S. E. 172; *Campbell* v. *Switzer,* 74 W. Va. 509, 82 S. E. 319; *International Harvester Co.* v. *Solazo,* 116 W. Va. 34, 178 S. E. 429. It is, therefore, settled law in this jurisdiction that the judicial proceedings of the courts of record of sister states will be given full faith and credit in our courts, and we must recognize the judgment of the Court of Common Pleas of Marion County, Ohio, as binding upon our courts, unless the same may be invalidated by lack of jurisdiction in the court rendering such judgment, or fraud in its procurement. We understand it to be generally recognized that lack of jurisdiction by the court rendering a judgment makes the same void, and that it is subject to attack in any jurisdiction wherein it is relied upon. "The proceedings in any court are void if it wants jurisdiction of the case in which it has assumed to act. Jurisdiction is, first, of the subject-matter; and, second, of the persons whose rights are to be passed upon. A court has jurisdiction of any subject-matter, if, by the law of its organization, it has authority to take cognizance of, try, and determine cases of that description. If it assumes to act in a case over which the law does not given it authority, the proceedings and judgment will be altogether void, and the rights of property can not be divested by means of them." 2 Cooley's Constitutional Limitations, 8th Ed. 845. Commenting on the full faith and credit clause of the Constitution, it is stated: "And the trial court may collaterally impeach a decree of judgment rendered in

another State, by proof that the court had no jurisdiction, though the record pretends to show such jurisdiction and the appearance of the party. But, the mere construction by a State Court of the statute of another State, when the court does not question the validity of the statute, does not deny to it the full faith and credit to which the statute is entitled in order to give the trial court jurisdiction." 2 Watson Constitution, 1198. There is much authority for the proposition that the judgment of a sister state may be impeached for fraud on the general theory that whereas such a judgment may be set aside for fraud in the state in which it is rendered, the same relief against it may be obtained in the courts of any state wherein such judgment is relied upon, although this, necessarily, involves the distinction between a direct and collateral attack. However, any doubt as to either of these propositions in our own jurisdiction, has been removed by the decision of this Court in *International Harvester Co.* v. *Salazo, supra.* In that case the force and effect of the full faith and credit clause of the Federal Constitution was recognized. Notwithstanding the fact that in *Farquhar & Co.* v. *Dehaven,* 70 W. Va. 738, 75 S. E. 65, 40 L. R. A. (N. S.) 956, Ann. Cas. 1914A, 640, this Court refused to recognize a so-called judgment note clause which authorized confession of judgment by an attorney of record, this Court, it was held, would not refuse to give recognition to a judgment obtained on such a note in the courts of a sister state. The decision goes on to hold that the jurisdiction of the court rendering the judgment might be challenged by special plea; and that while the judgment of another state may not be set aside because of averment that the basis of the action was tainted by fraud, if said allegation of fraud involved the procurement of the judgment, the same might be pleaded as a defense to a suit or action thereon in this state. We think, therefore, it may be safely said that in this state the defendant in a judgment or decree rendered in the courts of a sister state, may defend against the same in our courts, either on the ground of lack of jurisdiction to render the same, or that it was procured by fraud, the procurement by fraud being lim-

ited to the processes by which the judgment was obtained rather than fraud connected with the basis of the suit or action. Applying this rule to the case before us, we would say that if Joseph Hall and Lista Hall obtained their judgment in the Court of Common Pleas of Marion County, Ohio, on the theory that, having paid the said note as accommodation makers, they were entitled to recover judgment against the person accommodated, in this instance, Joe Perkins, such action would not constitute fraud. There might be a question of their legal right to sue at law on the note in question, rather than to resort to their equitable rights of contribution or subrogation, but that would be a legal question which the courts of Ohio had jurisdiction to determine. On the other hand, if they agreed with Joe Perkins to assume and pay said note, then their subsequent action in using the processes of the Ohio courts, to obtain a judgment to which they had no right, was a fraud upon Perkins, as well as the court whose processes were thus prostituted, and would, in our judgment, come within the definition of a procurement by fraud. We must therefore determine whether Joseph Hall and Lista Hall assumed the payment of the $1,000.00 note on which their judgment is based.

That question is one of fact, and has been determined adversely to the claim of Perkins. Many circumstances developed by the record, including the long and practically unexplained delay in instituting their action in the Ohio court, indicate that the Halls did take over the restaurant before Perkins returned to West Virginia in December, 1924, and dealt with it as their own property. If the court, upon the record, had found in favor of Perkins on that issue, we would not feel disposed to disturb its ruling. However, upon highly conflicting testimony, it found otherwise, and, giving due weight to its decision, we will not disturb the same. We, therefore, hold that fraud in the procurement of the judgment in question has not been established, and that if the Court of Common Pleas had jurisdiction to render the same, it must be given the full faith and credit to which it is entitled under our Federal Constitution.

It is assumed that the Court of Common Pleas of Marion County, Ohio, had jurisdiction of the subject matter involved in the suit instituted therein, in the sense that, if it also had jurisdiction of the parties, a judgment rendered by it would have been legal and entitled to full faith and credit in this state. However, the judgment sought to be enjoined in the suit before us is based upon a personal judgment, and to obtain that judgment there must have been service of process on the defendant, Perkins, or an appearance by him either in person or by attorney. It is admitted that there was no service of process, and if there was an appearance on the part of Perkins, it was through an attorney, and under authority of the power of attorney contained in the note involved. If by the payment of said note on March 2, 1925, by two of the makers thereof, the same was discharged, then the power of attorney authorizing confession of judgment was no longer of any force. We are, therefore, met squarely with the proposition of determining whether the payment of the note in the circumstances admitted amounted to a discharge thereof.

There seems to be some confusion on the point of defining who is primarily, and who secondarily liable on a negotiable instrument. Unquestionably indorsers are secondarily liable, but a surety may be, and usually is, primarily liable. Under the negotiable instruments law, Ohio General Code, Section 8226, corresponding to our Code, 46-8-3, an instrument paid by a party secondarily liable is not discharged. But is a maker of a note under any circumstances a person "secondarily liable"? Section 8296 of the Ohio Code, our Code, 46-17-2, provides, "The person 'primarily liable' on an instrument is the person who by its terms is absolutely required to pay it. All other parties are 'secondarily' liable." Applying this statute to the note involved herein, Joe Perkins, Joseph Hall and Lista Hall were all primarily liable, because each of them was absolutely required to pay the same, and when paid by them the note was, we think, discharged.

While the force and effect of the Ohio judgment must be governed by the law of that state, we feel warranted

in resorting to the decisions of other states bearing on the question of the discharge of a note when paid by the makers or one of them. We think it has always been the law that the payment of a negotiable instrument, at or after maturity, by the makers thereof, or any of them, extinguishes the note, and nothing in the negotiable instruments law weakens that proposition. In *Cussen* v. *Brandt,* 97 Va. 1, 32 S. E. 791, 75 Am. St. Rep. 762, it was held, "When one who is primarily bound for the payment of a note takes it up, it is a payment—an extinguishment—of the note, no matter what his intention may have been." In *Conrad* v. *Buck,* 21 W. Va. 396, Judge Snyder speaking for this Court said: "It is well settled, that where a surety pays a debt of his principal, which is evidenced by bond, the surety is not substituted to the rights of the creditor so far as to make him a bond creditor. The payment completely discharges and destroys the bond and leaves the surety to his remedy on his account for money paid for the use of his principal. The only contract availble to the surety after such discharge of the bond, is an implied promise that the debtor will repay him the amount so paid for his use", citing *Powell* v. *White,* 11 Leigh, 309, 38 Va. 309; *Kendrick* v. *Forney,* 22 Gratt., 748. In *Grizzle* v. *Fletcher,* 127 Va. 663, 105 S. E. 457, 458, it was held that where a surety pays off a note, "the surety can not take an assignment thereof to himself so as to enforce the note as such against his principal, but would have to rely on the implied undertaking of his principal to indemnify him." It is true that under our statute, Code, 45-1-4, as well as the Virginia Statute, 1936, Section 5777, any person liable as bail, surety, guarantor, indorser and other parties named may obtain a judgment at law for any sum paid for their principal, or the person primarily liable, but, as we view it, these statutes merely provide a remedy in addition to that which might be invoked under the equitable powers of the court providing for contribution or subrogation, and is not based on the instrument evidencing the original obligation, but arises from the implied obligation of the person whose duty it was to pay the same. In *Bailes* v. *Keck,* 200 Cal. 697, 254 Pac. 573, 51

A. L. R. 930, it was held that "Indorsement and delivery of a negotiable promissory note by the payee to one of several joint and several makers, after maturity and for valuable consideration, completely extinguishes the obligation of the note, and a subsequent similar assignment to a third person does not revive the note so as to make another maker liable to said holder." This rule applies in cases where a note is paid after maturity, and apparently does not apply, with the same strictness, to a note paid before maturity, as in the case before us. The distinction, apparently, grows out of possibility that the note may be reissued before maturity, and come into the hands of a holder in due course, and the makers thereof made liable therefor. That situation does not here arise, because, while the note was paid before maturity, it was not reissued, and we think the Halls stand in exactly the same position as they would have stood had they waited until the maturity of the note and then paid the same. In *Gordon* v. *Wansey*, 21 Cal. 77, the court held, "An assignment of a joint and several negotiable promissory note by the payee to one of the makers before its maturity amounts to a payment, and the right of action against the makers is not revived by a subsequent assignment to a third person after a maturity. If the subsequent assignment were made before maturity to an innocent person, a right of action would exist in his favor against the makers." See also: *Stevens* v. *Hannan*, 86 Mich. 305, 48 N. W. 951, 24 Am. St. Rep. 125, and 88 Mich. 13, 49 N. W. 874. A *bona fide* holder without notice may recover on an instrument paid before maturity and reissued. C. J. S. 107. The only persons here involved are the makers, whose obligations and rights originate from implications of law arising upon the payment of the instrument. In *Greenbrier Valley Bank* v. *Holt*, 114 W. Va. 363, 171 S. E. 906, it was held that payment of a judgment by one of the judgment debtors extinguishes the judgment at law, and that a creditor could not sell the judgment to one of the judgment debtors so as to keep it alive at law, although the equitable remedy of subrogation to the rights of the creditors in favor of a surety, or for contribution,

was not infringed upon.  We understand this principle to apply to notes, bonds and other evidences of debt.

We do not think the rule in Ohio is different from that so strongly upheld by the decisions above cited and discussed.  In *Zuellig* v. *Hemerlie,* 60 Ohio St. 27, 53 N. E. 447, 71 Am. St. Rep. 707, it was held, "A surety who has paid a note or other security for his principal can not sue upon it directly in an action at law.  His remedy is upon the implied contract of indemnity."  And in *Minx* v. *Byerly,* 60 Ohio App. 240, 20 N. E. (2d) 536, it was held, "Where one of the makers of a negotiable promissory note makes full payment thereof, upon the payee exercising his option to declare the whole amount due, and takes an assignment of the note from payee, such assignment is a mere nullity and the assignee can not sue his co-maker in an action at law on the theory of subrogation."  Neither of the two Ohio cases cited above involved a note where there was warrant of an attorney to confess judgment, but they both clearly hold that an action at law can not be maintained by one maker who has paid the note.  Presumably there was process in these cases, and yet the court held in both that an action at law could not be maintained, at the same time reserving to the plaintiff his equitable right of subrogation, and the equitable as well as legal statutory right of contribution.  These rights grow out of the implied undertaking that each party bound will pay his share, and not the note out of which the original obligation arose.  We have been cited to the case of *Rechtine* v. *Weis,* 12 Ohio Op. 88, decided by a Common Pleas Court of Ohio, not a court of last resort, wherein it was held that "The co-signer of a note as surety can be the legal holder of a note and under authority granted in the warrant of attorney secure judgment by confession."; and also "The surety, if there is an assignment to him by the creditor, has by the concurrent acts of himself and the creditor become vested with the legal title to the security and may sue thereon in his own name." This decision appears to be in conflict with the two preceding Ohio decisions above cited, and we are of the opinion that the holding of this inferior court should not be

permitted to overcome the well reasoned conclusions of two courts of higher rank, in the same jurisdiction, one of which was a court of last resort, and the other an intermediate appellate court.

Many cases could be cited which are in apparent conflict with the view we have expressed, but such conflict is not real. The discharge of a negotiable instrument, while destroying its force, as such, may, at the same time, create new obligations, as between the parties thereto. For example, as between several makers of such an instrument the moral obligations to pay the same may rest on one or more of them. In such cases, where the obligation is discharged by one, for the benefit of him whose duty it was to pay the same, the law creates an obligation in favor of him who pays against him who should have paid, on which a suit or action may be founded as circumstances may require. Subrogation, an equitable right, arises; and contribution may be enforced in equity, and, generally, at law. In most states, a statutory action at law is provided for. It is so with us. Code, 45-1-4. But these remedies are not based on the discharged instrument, but on the implied obligation which follows discharge. Therefore, the many cases which uphold the rights of sureties, indorsers, and accommodation makers, to relief in law or equity, are not, necessarily, based upon any continued existence of the original instrument, but upon the implied obligation above-mentioned, and do not require the holding that as the basis of relief, the original instrument remains undischarged.

It should be stated here that "authority to confess judgment without process must be strictly pursued, and that all proceedings in the confession of judgment must be within the strict letter of the warrant of attorney. An attorney acting under a warrant may not change its terms or enlarge its scope." 31 Am. Jur. 116. While we have no disposition to restrict or circumscribe the right and power of courts of a sister state to render judgments upon confession, in the circumstances developed by this record, yet power granted to attorneys to confess judgment, contained in a note, are not recognized in the courts of this state, and we feel inclined, in keeping with our general

policy, to strictly construe them as applied to judgments taken in states where they are recognized, and which are sought to be enforced in this state. The note here in question was executed by three makers, and the power of attorney incorporated therein authorizing confession of judgment, applied to each of the makers, and in a sense became a part of the contract between them. It was not, we think, contemplated that such power of attorney could be used to take the place of remedies of subrogation or contribution. If, as a matter of fact, the Halls were accommodation makers of the note for Joe Perkins, they were nevertheless primarily liable. There was an implied undertaking on the part of Perkins to repay to them any sum which they might be called upon to pay by reason thereof, but this implied obligation in their favor could not be enforced by the use of the power of attorney, contained in an instrument which had been extinguished by payment. That power of attorney was limited to confessing a judgment against all of the makers, and, independent of the extinguishment of the note by payment, the right of the Halls as against Perkins was one growing out of an implied obligation, which could only be enforced through the regular service of process, or by appearance in person or by attorney in answer thereto.

Lack of jurisdiction on the part of the Court of Common Pleas was apparent upon the face of the record. As stated above there was no service of process, and there was no personal appearance on the part of Perkins. There was appearance on the part of the attorney assuming to act under authority of the power of attorney embodied in the note. On the back of the note was an indorsement showing that the note had been paid by two of the makers, which was notice to the court that the note had been thereby extinguished, and the force of the power of attorney absolutely destroyed. The court had, therefore, the simple case of an action at law where there was neither process against, nor legal appearance on behalf of the defendant, and it was without jurisdiction to enter any judgment therein.

Another question fairly developed by the record is

whether plaintiffs' bill, being based primarily on an allegation of fraud in the procurement of the judgment is sufficiently definite in its charge of lack of jurisdiction. The question is definitely raised in the petition for appeal to this Court, and in the appellant's brief. We have held that "Equity having acquired jurisdiction of a cause for one purpose, although the relief sought be finally denied, any relief, legal or equitable, justified by the pleadings and tending to end litigation between the parties, will be granted." *Evans* v. *Kelley,* 49 W. Va. 181, 38 S. E. 497. In *Smith* v. *White,* 71 W. Va. 639, 78 S. E. 378, 48 L. R. A. (N. S.) 623, we held: "But it has long been the settled rule of practice, both in Virginia and in this state, that a court of equity, when once it has acquired jurisdiction of the cause of action and the parties, it will determine all questions involved, and settle the rights of all the parties, even though it should necessitate the ascertainment of unliquidated damages" In *Atlantic Terra Cotta Co.* v. *Moore Construction Co.,* 73 W. Va. 449, 80 S. E. 924, it is stated: "It is undoubtedly the rule that where equity has obtained jurisdiction of a cause for any purpose it may go on to do complete justice, even though this may involve the adjudication of legal rights." These statements of the law must be considered in connection with other holdings, which tend, in some degree, to limit their effect. In *Carlsbad Mfg. Co.* v. *Kelley,* 84 W. Va. 190, 100 S. E. 65, it was held: "In order to authorize relief obtainable in an action at law, some substantial ground must exist to confer equitable jurisdiction, and if the pleadings or proof fail to establish a basis for such relief, a court of equity is without jurisdiction to award other relief by way of recovery upon a purely legal demand, unless it appears that the remedy at law is inadequate."; and in *Wyoming Coal Sales Company* v. *Smith-Pocahontas Coal Company,* 105 W. Va. 610, 144 S. E. 410, 62 A. L. R. 740, it is held: "The rule that equity will retain jurisdiction, once assumed, and dispose of all matters in litigation, is limited to cases where that jurisdiction has been rightfully invoked. While equity extends its aid upon mere averment, it withdraws that

aid upon failure of proof. * * * 'The rule is that where a cause of action cognizable at law is entertained in equity on the ground of some equitable relief sought by the bill, which it turns out cannot for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further and should dismiss the bill without prejudice.' " Citing *McDowell* v. *Mitchell,* 105 U. S. 430, 26 L. Ed. 1142, and other cases. There is, therefore, grave doubt whether, upon failure to sustain the cause upon the sole ground on which equity could take jurisdiction thereof, relief could be granted on some other ground which might be cognizable in a court of law. However, we do not think it necessary to definitely pass upon that question, because lack of jurisdiction to render the judgment under attack has been raised throughout this suit, and if the circuit court of McDowell County had jurisdiction of the cause on the ground of lack of jurisdiction in the Ohio court to render said judgment, then the cause would not entirely depend upon the allegation of fraud in its procurement. "A void judgment is no judgment at all, but a mere nullity and may be assailed in any court, anywhere, whenever any claim is made or rights asserted under it." 6 Digest of Virginia and West Virginia Reports, 332; *Roberts* v. *Hickory Camp Coal and Coke Co.,* 58 W. Va. 276, 52 S. E. 182; *New Eagle Gas Coal Co.* v. *Burgess,* 90 W. Va. 541, 111 S. E. 508. As to domestic judgments obtained through lack of process, and therefore jurisdiction, the enforcement of the same may be enjoined. *Nuttallburg Smokeless Fuel Co.* v. *First National Bank,* 89 W. Va. 438, 109 S. E. 766; *Fuel Co.* v. *First National Bank,* 106 W. Va. 487, 145 S. E. 824. In *Hatfield* v. *U. S. Coal & Coke Co.,* 111 W. Va. 289, 161 S. E. 572, a suit to enjoin an action of ejectment on the ground of lack of process was entertained, although relief was denied. Of the same nature is *Lanham* v. *Home Auto Co.,* 115 W. Va. 415, 176 S. E. 604. If a court of equity will take jurisdiction of a suit to enjoin a domestic judgment, on account of lack of process or other grounds, affecting the jurisdiction of the court to render it, we see no reason why the same rule should not apply to a judgment ren-

dered by a court of another state, and where it is sought to enforce the same against a resident defendant in the courts of this state, although in one case judgment is sought to be annulled, while in the other its use as evidence in an action at law is sought to be enjoined. In each case, however, the grounds of attack against the judgment is lack of jurisdiction in a court to enter the same, and the parallel is close enough to warrant the application of the same rule of law. We are of the opinion that the failure of the plaintiff to sustain his charge of procurement of the judgment by fraud, did not operate to require dismissal of his suit, so long as the question of jurisdiction to render the judgment under attack remained open. We think the lower court should have found that the Common Pleas Court of Marion County, Ohio, was without jurisdiction to render the judgment under attack, and that the plaintiff's bill should be sustained on that ground, and the temporary injunction awarded made permanent.

The decree of the Circuit Court of McDowell County will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*