304 S.E.2d 347

**Hershel FULLER, Plaintiff Below,**

**Richard G. Rundle, etc., Appellant**

**v.**

**STONEWALL CASUALTY CO. OF W. VA., etc.**

**No. 15665.**

Supreme Court of Appeals of West Virginia.

June 22, 1983.

Richard G. Rundle, Pineville, for appellant.

James C. Lyons, Pineville, for Stonewall Cas. Co., etc.

G. David Brumfield, Ballard & Brumfield, Welch, for First Nat. Bank of Bluefield and Yeager Ford Sales, Inc.

MILLER, Justice:

The primary issue on this appeal is whether an attorney's lien, for services rendered to a client for collecting proceeds under the provisions of an automobile casualty policy, is superior to the rights of the client's chattel mortgage lienholder to whom loss is payable under a loss payee clause of the insurance policy. The Circuit Court of Wyoming County held that the attorney's lien was not superior. We affirm, in part, and reverse, in part.

Hershel Fuller purchased a truck in 1979 from Yeager Ford Sales, Inc. (hereinafter Yeager Ford) and executed a security agreement which was subsequently assigned to the First National Bank of Bluefield (hereinafter Bank). The terms of the agreement required Fuller to secure automobile insurance which he obtained from Stonewall Casualty Company. The Bank was made a loss payee under the policy. Thereafter, the truck was destroyed by fire and Stonewall Casualty refused to settle the claim.

Fuller retained Attorney Richard Rundle on a twenty-five percent contingency fee basis and a suit was instituted against Stonewall Casualty. The attorney asserts that neither the Bank nor Yeager Ford assisted or offered to help in the suit to collect on the policy, although they monitored the litigation and appeared at various hearings.

The litigation terminated with Stonewall Casualty agreeing to pay $6,500 in settlement of the claim. At a distribution hearing, the circuit court allocated $2,480.01 of the proceeds to the Bank, and $3,832.83 to Yeager Ford based on the fact that it had made payments on behalf of Fuller when he ceased his installment payments after the truck was destroyed by the fire. This left $187.19 of the proceeds available for the attorney.

The attorney maintains that Yeager Ford had no lien, judgment nor legal claim against Fuller for the destroyed truck and, therefore, was not entitled to any of the insurance proceeds. He also contends that his attorney's lien should not be subordinate to the Bank's claim.

I.

CLAIM OF THE BANK

We have sanctioned the use and enforceability of charging liens by attorneys in this jurisdiction.[1] In Syllabus Point 1 of

1. A "charging lien" is the right to assert a monetary claim on a judgment or other fund of money obtained for the client by the attorney, whereas an "attorney's retaining lien" is the right of an attorney to retain possession of his client's documents, money, or other property which comes into the attorney's possession until the fees due him for professional services are paid. *Capehart v. Church*, 136 W.Va. 929, 69 S.E.2d 127 (1952). However, an attorney has no retaining lien upon money received by him from a client for special purposes. *In Re Marcum*, 135 W.Va. 126, 62 S.E.2d 705 (1939). We have held the attorney's lien to be of an eq-

*Fisher v. Mylius,* 62 W.Va. 19, 57 S.E. 276 (1907), we said:

> "An attorney has a lien, on a judgment obtained by him for his client, for his services in the case, the amount whereof is fixed by special contract, although payment thereof cannot be had under the terms of the contract until the money is actually recovered, and no money can be had under an execution on the judgment."[2]

■ The general rule regarding the priority of an attorney's lien is that in the absence of some statute,[3] the lien of an attorney ordinarily takes effect at the time of the commencement of the attorney's services. *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962); *Ingalls Iron Works Company v. Fehlhaber Corporation,* 337 F.Supp. 1085 (S.D.N.Y.1972); *Great American Insurance Company v. Department of Revenue, State of Illinois,* 226 F.Supp. 512 (N.D.Ill., E.D.1963); *T. Harlan & Co. v. Bennett, Robbins & Thomas,* 127 Ky. 572, 106 S.W. 287 (1907); *St. Joseph's Hospital v. Quinn,* 241 Md. 371, 216 A.2d 732, 25 A.L.R.3d 849 (1966); *Myers v. Miller,* 134 Neb. 824, 279 N.W. 778, 117 A.L.R. 977 (1938); 7 Am.Jur.2d *Attorneys at Law* § 332 (1980).

■ An attorney's charging lien attaches only to a judgment or fund of money that the client is entitled to receive and which the attorney procured through his efforts, as evidenced by the following Syllabus Points of *Schmertz v. Hammond,* 51 W.Va. 408, 41 S.E. 184 (1902):

> "4. An attorney has no lien upon a fund which he is not instrumental in creating, and which never came to his hands.

> "5. An attorney's special lien for pay for his services out of a fund in court exists only where his client is entitled to participate in that fund. He cannot claim it out of a fund decreed to go to a party under a right adverse to that of the party represented by the attorney. Such party cannot be compelled to pay for the services of an attorney rendered against him.

> "6. Where a fund in court arising from a sale of property is consumed by a prior lien, the attorney representing a junior demand has no lien upon that fund for his services."

This is also the general rule elsewhere. *In Re Shirley Duke Assoc.,* 611 F.2d 15 (2nd Cir.1979); *Lyman v. Campbell,* 182 F.2d 700 (D.C.Cir.1950); *Conroy v. Conroy,* 392 So.2d 934 (Fla.App.1980); *Covington v. Rhodes,* 38 N.C.App. 61, 247 S.E.2d 305 (1978).

■ In the present case, the Bank was named as loss payee on the insurance policy that covered the truck for the fire loss. A loss payee under a fire insurance policy is ordinarily looked upon to have a separate contractual right with the insurer. *Fire Association of Philadelphia v. Ward,* 130 W.Va. 200, 42 S.E.2d 713 (1947); *Fayetteville Building and Loan Association v. Mutual Fire Insurance Company of West Virginia,* 105 W.Va. 147, 141 S.E. 634 (1928); 5A Appleman, *Insurance Law and Practice* § 3401 (1970); 43 Am.Jur.2d *Insurance* § 194 (1969). By reason of this contractual right, a lienholder who is named as loss payee on an insurance policy is entitled to the insurance proceeds to the extent of the amount of his debt which is independent of the claim of other lien or judgment creditors. *E.g., Calvert Fire Insurance Company v. Environs Development Corporation,* 601 F.2d 851 (5th Cir.

uitable origin existing independent of any statute. *Capehart v. Church, supra; Young v. Hodges,* 121 W.Va. 280, 3 S.E.2d 219 (1939); *State ex rel. Showen v. O'Brien,* 89 W.Va. 634, 109 S.E. 830 (1921).

**2.** *Fisher v. Mylius, supra,* involved an attorney who had a specific fee contract with his client. In Syllabus Point 1, in part, of *Renick v. Ludington,* 16 W.Va. 378 (1880), we held that an attorney's lien arose "whether the amount of his

compensation is agreed upon or depends upon a *quantum meruit.*"

**3.** In New York, by statute an attorney's lien comes into being at the commencement of an action or proceeding. *Matter of Brooklyn Bridge Southwest Urban Renewal Project, City of New York,* 31 A.D.2d 895, 297 N.Y.S.2d 835 (1969).

1979); *City of Newark v. Central & Lafayette Realty Company, Inc.,* 150 N.J.Super. 18, 374 A.2d 504 (1977); *St. Louis County National Bank v. Maryland Casualty Company,* 564 S.W.2d 920 (Mo.App.1978). In *Calvert Fire Insurance Company v. Environs Development Corporation, supra,* at 858, the court expressed the rule as follows: "[A] mortgagee or lienholder has no claim to the benefit of a fire insurance policy unless he has been named loss-payee or the policy has otherwise been assigned to him." This rule has been specifically applied in several cases involving an attorney's lien where the attorney did not represent the loss payee. *E.g., Sureck v. United States Fidelity and Guaranty Company,* 353 F.Supp. 807 (W.D.Ark.1973); *Leiden v. General Motors Acceptance Corporation,* 136 Ga.App. 268, 220 S.E.2d 716 (1975); *Howard, Singer & Meehan v. Clayton Federal Savings and Loan Association,* 578 S.W.2d 56 (Mo.App.1978). *See also* 5A Appleman, *Insurance Law and Practice* § 3404 (1970).

■ Based on this law, we conclude that the circuit court was correct in determining that the Bank was entitled to the insurance proceeds independent of the attorney's lien.[4]

## II.

### CLAIM OF YEAGER FORD

■ Yeager Ford maintains that the payment it received from the insurance proceeds was proper because it had paid the Bank when Fuller defaulted on his installment purchase contract. Yeager Ford points to the fact that it guaranteed Fuller's commercial paper when it was assigned to the Bank.[5] We are aware of general law to the effect that where a guarantor pays to the creditor the debt on behalf of the principal obligor, he is ordi-

narily entitled to be subrogated to the rights of the creditor as against the principal obligor and accrue to such security as has been taken by the creditor from the principal obligor. *See Perkins v. Hall,* 123 W.Va. 707, 718, 17 S.E.2d 795, 802 (1941). *E.g., D.W. Jaquays & Co. v. First Security Bank,* 101 Ariz. 301, 419 P.2d 85 (1966); *Collection Control Bureau v. Weiss,* 50 Cal.App.3d 865, 123 Cal.Rptr. 625 (1975); *Behlen Manufacturing Company v. First National Bank of Englewood,* 20 Colo. App. 300, 472 P.2d 703 (1970); *Knight v. Cheek,* 369 A.2d 601 (D.C.App.1977); *St. Paul Fire and Marine Insurance Company v. New Jersey Bank and Trust Co.,* 104 N.J.Super. 367, 250 A.2d 57 (1969); *Fulton v. South Oak Cliff State Bank,* 439 S.W.2d 730 (Tex.Civ.App.1969); 38 Am.Jur.2d *Guaranty* § 127 (1968).

■ The right of subrogation is not, however, without limitations. We have recognized, as have other courts, that it is an equitable right and will be enforced unless it works an injustice to another party. In the single Syllabus of *Buskirk v. State-Planters' Bank & Trust Co.,* 113 W.Va. 764, 169 S.E. 738 (1933), we said:

> "Subrogation, being a creation of equity, will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another."

*See also Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213 (1941); *Perkins v. Hall, supra; McNeil v. Miller,* 29 W.Va. 480, 2 S.E. 335 (1887); *Cooper Tire & Rubber Co. v. Northwestern National Casualty Co.,* 268 Ark. 334, 595 S.W.2d 938 (1980); *Hartford Accident and Indemnity Co. v. Chung,* 37 Conn.Supp. 587, 429 A.2d 158 (1981); *Bryan v. Henderson Electric Company,* 566 S.W.2d 823 (Ky.App.1978); *Motor Vehicle Securi-*

---

4. No contention is made that the attorney was also authorized to represent the Bank's interest on the claim against the insurance company.

5. The pertinent language as to Yeager Ford's guaranty is:

"WITH FULL RECOURSE
"In addition to all of Seller's representations, warranties, covenants, and agreements set forth in any aforesaid separate agreement(s) with Assignee, Seller unconditionally guarantees payment of the Obligation waiving notice of the acceptance hereof and of defaults under said Contract, and also waiving any right to require prior enforcement of any rights against any person or any Collateral."

*ty Fund v. All Coverage Underwriters, Inc.*, 22 Md.App. 586, 325 A.2d 115 (1974); *Rock River Lumber Corp. v. Universal Mortgage Corp. of Wisconsin*, 82 Wis.2d 235, 262 N.W.2d 114 (1978); 173 Am.Jur.2d *Subrogation* § 15 (1974); Annot., 137 A.L.R. 700 (1942).

■ It is also generally held that the right to subrogation does not arise until the entire debt has been paid. *Zeigler v. Blount Brothers Construction Co.*, 364 So.2d 1163 (Ala.1978); *Earl Dubey & Sons, Inc. v. Macomb Contracting Corporation*, 97 Mich.App. 553, 296 N.W.2d 582 (1980); *Montefusco Excavating & Contracting Co., Inc. v. Middlesex County*, 82 N.J. 519, 414 A.2d 961 (1980); *Ohio Casualty Insurance Company v. First National Bank of Nicholasville, Kentucky*, 425 P.2d 934 (Okl.1967); *Commercial Union Insurance Company v. Postin*, 610 P.2d 984 (Wyo. 1980); 73 Am.Jur.2d *Subrogation* § 30 (1974). In Syllabus Point 2 of *Price v. Lovins*, 117 W.Va. 624, 187 S.E. 318 (1936), we adopted this rule:

"Subrogation, as a general rule, will not be decreed until the entire debt, the

security for which the subrogee seeks, has been paid."

The reason for this rule is that ordinarily the principal creditor is entitled to pursue his rights and securities without having to share them by way of partial subrogation until his debt is paid in full.[6]

■ In the present case, the total indebtedness owed to the Bank, the primary creditor, was not paid until after a settlement was reached with the insurance company. By this time, the attorney's lien had already accrued. We do not reject Yeager Ford's right to subrogation entirely but only hold that it does not have standing through subrogation to obtain the entire amount of its payments free of the attorney's lien.[7] The right of subrogation when it occurs does not give rise to a judgment, but permits a subrogee to step into the shoes of the creditor and to obtain such security as the creditor may have against the debtor. 73 Am.Jur.2d *Subrogation* §§ 103 & 109 (1974).

■ The attorney also argues that we should construe W.Va.Code, 46–9–310,

---

**6.** A further elaboration is provided in 73 Am. Jur.2d *Subrogation* § 30 (1974):

"Until the debt is paid in full, there can be no interference with the creditor's rights or securities that might, even by a bare possibility, prejudice or in any way embarrass him in the collection of the residue of his debt. Obviously, it would be unjust to permit a surety or other person on payment of part of a debt to appropriate to himself the security the creditor holds for the satisfaction of the entire indebtedness. If a surety who has made a partial payment should be subrogated pro tanto, he would occupy a position of equality with the holder of the unpaid part of the debt, and if the property were insufficient to pay the remainder of the debt for which the surety is bound, the loss would fall proportionately on the creditor and the surety." (Footnotes omitted)

**7.** The only claim that Yeager Ford could make on the insurance fund proceeds is by way of asserting that it was subrogated to the title lien taken by the Bank at the time the truck was sold pursuant to W.Va.Code, 17A–4A–3. Under the Uniform Commercial Code, W.Va.Code, 46–9–302(3)(b), a security interest in a motor vehicle can be perfected without the filing of a financing statement because of W.Va.Code, 17A–4A–3.

Assuming the security interest was perfected, because the truck was destroyed, it would be necessary to proceed to W.Va.Code, 46–9–306 (1972). This statute controls a secured party's rights on disposition of collateral. The official commentary to the 1972 amendments of § 9–306 of the UCC states that Subsection 1 "makes clear that insurance proceeds from casualty loss of collateral are proceeds within the meaning of this section." We have adopted this amendment. W.Va.Code, 46–9–306 (1974). This does not, however, ultimately answer whether the requirement of W.Va.Code, 46–9–306(3), has been met. One leading UCC commentator has spoken in this regard as to § 9–306:

"It is a brave person indeed who approaches 9–306 without trepidation. Not only is the section awesomely complex, but it has changed significantly from 1962 to 1972. To make matters still worse, the slick language of 9–306 covers so vast an assortment of factually different and complex problems that generalization and simplification are fraught with peculiar risks." T. Quinn, *Uniform Commercial Code Commentary and Law Digest* ¶ 9–306[A] (1978).

We decline to resolve this issue because it was not raised below.

which gives an elevated priority to an improver's lien to cover an attorney's lien.[8] We decline to do this because this statute is designed to apply to a workman who furnishes services or materials to chattels or goods in his possession. "Goods" are defined in W.Va.Code, 46–9–105(h), as "all things which are movable ... or which are fixtures ... but does not include money, documents, instruments, accounts, chattel paper, general intangibles or minerals."[9] Under the UCC, "contract rights" are included in the definition of "accounts," W.Va.Code, 46–9–106, and, therefore, excluded from the definition of "goods." *See Dynair Electronics, Inc. v. Video Cable, Inc.,* 55 Cal.App.3d 11, 127 Cal.Rptr. 268, 18 U.C.C.Rep. 1047 (1976); *Utica National Bank & Trust Co. v. Associated Producers Co.,* 622 P.2d 1061, 30 U.C.C.Rep. 317 (Okl. 1981); *First National Bank of Rio Arriba v. Mountain States Telephone & Telegraph Co. v. Siler,* 91 N.M. 126, 571 P.2d 118, 22 U.C.C.Rep. 1278 (1977); J. White & R. Summers, *Uniform Commercial Code* § 22–8 (1972); T. Quinn, *Uniform Commercial Code Commentary and Law Digest* ¶ 9–106[A][1] (1978). Thus, the insurance claim pursued by the attorney is excluded from the definition of "goods" as it is a contract right; and, the provisions of W.Va.Code, 46–9–310, are not available for an attorney's lien.

In view of the foregoing law, we find that Yeager Ford was not entitled to be reimbursed out of the insurance proceeds. Consequently, the circuit court erred in this respect and the attorney's lien is valid as to this portion of the fund. For this reason, the judgment of the circuit court is reversed and the case is remanded.

**8.** W.Va.Code, 46–9–310, provides:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

**9.** The full text of W.Va.Code, 46–9–105(h), is:

Affirmed, in part.
Reversed, in part.

" '[G]oods' includes all things which are movable at the time the security interest attaches or which are fixtures (section 9–313) [§ 46–9–313], but does not include money, documents, instruments, accounts, chattel paper, general intangibles, or minerals or the like (including oil and gas) before extraction. 'Goods' also include standing timber which is to be cut and removed under a conveyance or contract for sale, the unborn young of animals and growing crops."